PEOPLE *v.* MICALIZZI.

1. CRIMINAL LAW—CONSTITUTIONAL LAW—RIGHT TO PUBLIC TRIAL VIOLATED BY LOCKING COURT ROOM DOORS DURING JUDGE'S CHARGE.

   The right of defendant on trial for murder to a public trial under section 19, Art. 2, of the Constitution, and 3 Comp. Laws 1915, § 12252, was violated where, before the court charged the jury, the doors of the court room were locked and kept locked during the charge so that one of defendant's attorneys and others were refused admission to the court room; the record not presenting a case of an overcrowded court room or the exclusion of children of a tender age or of witnesses.

2. NEW TRIAL — VIOLATION OF RIGHT TO PUBLIC TRIAL PROPERLY PRESENTED IN MOTION FOR.

   The question that defendant was deprived of his constitutional right to a public trial by locking the court room doors during the charge of the court to the jury in a prosecution for murder was properly presented by a motion for a new trial.

Error to recorder's court of Detroit; Heston (Wil-

On right of court to exclude public from court room during criminal trial, see notes in 9 L. R. A. (N. S.) 277; 27 L. R. A. (N. S.) 487; 44 L. R. A. (N. S.) 583; L. R. A. 1918C, 1168.

On the question of the right of accused to a public trial, see note in 14 L. R. A. 809.

liam M.), J.    Submitted April 17, 1923.    (Docket No. 122.)    Decided July 19, 1923.

John Micalizzi was convicted of murder in the first degree, and sentenced to imprisonment for life in the State prison at Marquette.    Reversed.

*Speed, Ring & Kelly* and *Anhut, Ring & Carpenter,* for appellant.

*Andrew B. Dougherty,* Attorney General, *Paul W. Voorhies,* Prosecuting Attorney, and *Edwin S. Bartlett,* Assistant Prosecuting Attorney, for the people.

FELLOWS, J.   Defendant was convicted of murder in the first degree and prosecutes this writ of error to review such conviction.   But one meritorious question is presented by this record, *i. e.,* Did the defendant have the public trial guaranteed him by the Constitution?   It was made to appear on a motion for a new trial that, before the judge charged the jury, one of the court officers announced that those desiring to leave should do so as the doors were to be locked; that both doors of the court room, one leading to the corridor and the other to the clerk's office, were locked and remained locked during the charge, and that one of defendant's attorneys and others were refused admission to the court room.   It was also made to appear that there were plenty of vacant seats in the court room.   Except by inference it was not made to appear that this course was taken by order of the court.

Section 19 of article 2 of the Constitution contains the following:

"In every criminal prosecution, the accused shall have the right to a speedy and public trial by an impartial jury, which may consist of less than twelve men in all courts not of record; to be informed of

the nature of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; to have the assistance of counsel for his defense." * * *

Section 12252, 3 Comp. Laws 1915 (originally enacted in 1846), provides:

"The sittings of every court within this State shall be public, and every citizen may freely attend the same."

Similar constitutional provisions will be found in the Federal Constitution and in those of the States of the Union. These provisions inhibit star chamber trials. The record before us does not present a case of an overcrowded court room, of the exclusion of children of tender age or the exclusion of witnesses, but does present a case where a part of the trial was conducted behind locked doors. The record presents a case where the public was excluded from a portion of the trial and one of the defendant's attorneys was prevented from being present during the charge of the court.

We are not concerned with the guilt or the innocence of this defendant. We are concerned with whether his constitutional rights have been invaded. Constitutions were written to be obeyed. Their provisions are mandatory. They protect the humblest as well as the powerful, the meanest as well as the upright. The defendant by the Constitution was guaranteed a public trial, not one behind locked doors; he was guaranteed a trial to which the public was admitted, not part of the public and part of the time, but the public generally and all of the time. This court has had occasion to speak on this subject and it has spoken in no uncertain terms. A leading case not only in this State but in the country as well is *People* v. *Murray*, 89 Mich. 276 (14 L. R. A. 809, 28

Am. St. Rep. 294).    Chief Justice CHAMPLIN, who
wrote for the court, there said:

"The right to a public trial is one of the most im-
portant safeguards in the prosecution of persons
accused of crime.    In this case, when the accused is
upon trial for a crime for which, if convicted, his
punishment is that he must suffer a life imprison-
ment,—a civil death,—an order is made by the court
which violates the constitutional right of the accused,
and the statute enacted to protect the rights of parties
in both civil and criminal cases.    The right of the
accused to a public trial is included in the same section
of the Constitution with the right to a trial by an im-
partial jury of 12 men; to be informed of the nature
of the accusation; to be confronted with the witnesses
against him; to have compulsory process for obtain-
ing witnesses in his favor; and to have the assistance
of counsel for his defense.    It is not necessary to
review the history of the administration of the criminal
law in England, or to call attention to the abuses
in its administration, to show the reason why these
important provisions were inserted in our Constitu-
tion, which, in this respect, is but a reflection of
similar provisions contained in all of the constitutions
of the American States and of the United States.
They are each and all enacted for the protection of
rights of persons accused of criminal offenses, and
each is a constant memorial of the great abuses
practiced in England at one time and another prior
to the American Revolution, in conducting criminal
prosecutions."

And in commenting on the case of *People* v. *Kerri-
gan*, 73 Cal. 222 (14 Pac. 849), he said:

"I cannot accede to the correctness of the proposi-
tion intimated in that case that, if a public trial has
not been accorded to the accused, the burden is upon
him to show that actual injury has been suffered by a
deprivation of his constitutional right.    On the con-
trary, when he shows that his constitutional right has
been violated, the law conclusively presumes that he
has suffered an actual injury.    I go further, and say
that the whole body politic suffers an actual injury

when a constitutional safeguard erected to protect the rights of citizens has been violated in the person of the humblest or meanest citizen of the State. The Constitution does not stop to inquire of what the person has been accused or what crime he has perpe-trated; but it accords to all, without question, a fair, impartial, and public trial."

It is interesting to note that in a later case (*People* v. *Hartman*, 103 Cal. 242 [37 Pac. 153, 42 Am. St. Rep. 108]), the California court adopted the doctrine so forcefully set forth by Chief Justice CHAMPLIN in the *Murray Case* and cited that case with approval. The *Murray Case* was also cited with approval in *State* v. *Keeler*, 52 Mont. 205 (156 Pac. 1080, L. R. A. 1916E, 472, Ann. Cas. 1917E, 619), where it was said:

"To the credit of our courts it may be said that the question before us has seldom arisen, but, when it has, the authorities with singular unanimity have up-held the right guaranteed by the Constitution, and have given such construction to the guaranty as vitalizes it and makes it of practical, not merely theoretical, value."

It was also there said:

"Just how a defendant could show that he was prejudiced by an order excluding the public or that the presence of a particular person or of the public could have been of advantage to him is not disclosed, and such reasoning has been condemned by the courts everywhere. With equal propriety the court might deny a defendant charged with a felony the right to a trial by a jury, and then insist that the defendant, found guilty by the court, must show prejudice by demonstrating that a jury would have reached a different result."

The *Murray Case* was followed by this court in *People* v. *Yeager,* 113 Mich. 228, where the validity of Act No. 408, Local Acts 1893, § 18, was involved, and the act was held invalid because it deprived the

accused of a public trial guaranteed by the Constitution.    And in *People* v. *Warren*, 122 Mich. 504 (80 Am. St. Rep. 582), this court, speaking through Mr. Justice MOORE, said:

"The right of trial by jury was denied to persons accused of crime in the early history of the race.   It was not until after a long and persistent struggle that the right was secured.    This right was deemed so essential that in the Constitution of the United States, by the Sixth Amendment, 'the right to a speedy and public trial by an impartial jury of the State and district wherein the crime shall have been committed' is guaranteed.    It has been held that this is a right which cannot be waived, and that a trial by the judge, even by the consent of the prisoner, is erroneous. *State* v. *Maine*, 27 Conn. 281.    Article 6, § 28, of the Constitution of this State, also guarantees to the accused the right to a speedy and public trial by jury. This is a right which cannot be waived except by a plea of guilty."

We have no disposition to recede from the doctrine announced by this court in the cases referred to.    If a portion of the trial may be conducted behind barred doors, it may all be conducted behind barred doors. If one constitutional right may be violated with impunity, all may be and the bill of rights becomes but a scrap of paper.    The defendant has not had the public trial guaranteed him by the Constitution.    The *Murray Case* so fully considers the question that we refrain from further discussion of it.    The question was properly presented by a motion for a new trial. *Hill* v. *People*, 16 Mich. 351; *People* v. *Murray, supra.*

The conviction will be set aside and a new trial ordered.    Defendant will be remanded to the custody of the sheriff of Wayne county.

WIEST, C. J., and McDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.    MOORE, J., did not sit.