THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
CHRISTOPHER VENTERS, Appellant.

First Department, February 10, 1987

APPEARANCES OF COUNSEL

*Joel B. Rudin* for appellant.

*Gregory H. Mansfield* of counsel *(Susan Corkery* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

## OPINION OF THE COURT

WALLACH, J.

On this appeal from his conviction for the crime of robbery in the second degree, defendant has raised a serious constitutional and statutory challenge to the practice, almost universally applied in criminal trials conducted in this State, of automatically closing and locking the courtroom doors during the Judge's charge to the jury.[1]

Immediately prior to commencement of the court's charge to the jury in this case, defendant requested, on the record, that the courtroom doors remain unlocked. The court summarily denied the application. Defendant contends that this ruling deprived him of his right to a public trial guaranteed under both Federal (US Const 6th, 14th Amends) and State (Civil Rights Law § 12; Judiciary Law § 4) law. We agree, and reverse on the ground that courtroom closure during the charge in a criminal case, however hoary and time-honored such a practice may be, does not pass constitutional or statutory muster.

The 6th Amendment's command that a criminal trial be public " ' "is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions" ' " *(Gannett Co. v DePasquale,* 443 US 368, 380, quoted in *Waller v Georgia,* 467 US 39, 46). While the focus of the discussion in *Waller v Georgia* was whether the right to a public trial extended to a pretrial suppression hearing, the Supreme Court dealt with the issue in more expansive terms *(supra,* at p 48): "[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must con-

---

1. There have been exceptions. The propriety of courtroom closure during the course of the charge was disapproved in a thoughtful opinion by McQuillan, J., in *People v Olmo* (NYLJ, Dec. 2, 1982, p 11, col 6 [Sup Ct, NY County]).

sider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure."[2]

A "presumption of openness" was held to apply to the voir dire phase of trial in *Press-Enterprise Co. v Superior Ct. of Cal.* (464 US 501, 510) which could "be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." We are asked by the People to find such an overriding interest in the need to insure that any possible distraction for the jurors in the course of the charge be averted. In 1982, the Second Circuit adopted that view, describing the kind of complaint lodged by defendant here as "frivolous" *(United States v Romano,* 684 F2d 1057, 1065, *cert denied* 459 US 1016),[3] and it remains a mere mote in the eye of our dissenting colleague. However, less than three years later, in *Latzer v Abrams* (602 F Supp 1314, 1322, n 11), Judge Glasser pointed out that this aspect of *Romano* might "deserve reconsideration" by the Second Circuit in light of *Waller (supra)* and *(Press-Enterprise (supra).* Thus, the authority of *Romano* on this point is now suspect. As Judge Glasser rhetorically inquired in *Latzer (supra,* p 1322, n 11): "If, as held in *Romano,* the avoidance of any jury distraction justified the closure, may the courtroom be locked to assure that a jury is not distracted during the crucial testimony of a principal witness?" It therefore appears extremely doubtful that defendant's right to a completely public trial may hinge on an assessment of just how crucial a given phase of the trial may turn out to be. Obviously, to the Trial Judge, the charge must occupy a lofty plain where he or she takes the center of the stage. But even if that be so, there are 1st Amendment considerations *(Press-Enterprise Co. v Superior Ct. of Cal.,*

---

2. Obviously, there are "reasonable alternatives" short of total closure that may be adopted by the trial court to prevent the distraction of the jury while the charge is underway. For example, a court officer may be stationed outside the door to insure unobstrusive entry by visitors. Furthermore, it would be within the discretion of the presiding Judge to require members of the public present in the courtroom to remain until the charge is concluded.

3. Some of our sister States have taken the diametrically opposite view. At least two have reversed murder convictions based upon unjustified closure of the court to the public during the charge *(State v Lawrence,* 167 NW2d 912 [Iowa 1969]; *People v Micalizzi,* 223 Mich 580, 194 NW 540 [1923]), and others have specifically noted that the right to a public trial encompasses the court's instructions to the jury *(Sirratt v State,* 240 Ark 47, 398 SW2d 63, 67 [1966]; *People v Teitelbaum,* 163 Cal App 2d 184, 329 P2d 157, 172 [1958]).

supra) which indicate that the charge be as equally accessible to the public as any other phase of a criminal trial. It should be recalled that another purpose of a public trial is "to instill a sense of public trust in our judicial process by preventing the abuses of secret tribunals as exemplified by the Inquisition, Star Chamber and *lettre de cachet* * * * Not only the defendant himself, but also the public at large has a vital stake in the concept of a public trial." *(People v Hinton,* 31 NY2d 71, 73.) The very importance of the jury charge in the conduct of a criminal case is itself an argument for its immediate accessibility to the public.

New York State decisions have not lagged behind the Federal in appreciation of the importance of the right to a public trial. Indeed, in *People v Jones* (47 NY2d 409, 414-415, *cert denied* 444 US 946) the Court of Appeals held that unjustified closure is reversible error per se, and the aggrieved defendant has no obligation to demonstrate prejudice *(see also, People v Jelke,* 308 NY 56). It is therefore irrelevant that this record is barren of any showing that during the delivery of the charge there were persons outside the courtroom whose attempt at entry was actually frustrated.

Concededly, the right to a fully public trial is not absolute, and must give way to compelling circumstances, such as protection of the life of an undercover narcotics agent or the need to preserve his anonymity in other ongoing investigations *(People v Hinton, supra; People v Garcia,* 51 AD2d 329, 331, *affd* 41 NY2d 861). But such factors must be clearly established on the record *(People v Jones, supra),* and where inadequately shown, this court has not hesitated to vindicate the importance of the public trial right by reversal of the conviction *(People v Castro,* 63 AD2d 891; *People v Morales,* 53 AD2d 517; *People v Richards,* 48 AD2d 792; *People v Tillery,* 36 AD2d 928). The Fourth Department reached a similar conclusion in *People v Ludolph* (63 AD2d 77), where closure was held to be supportable to protect the privacy of two juvenile witnesses, but found impermissible when the closure was extended to the testimony of a third adult witness.

Accordingly, the judgment of the Supreme Court, New York County (Albert P. Williams, J.), rendered April 22, 1983, which convicted defendant, after a jury trial, of robbery in the second degree, and sentenced him to an indeterminate term of 1½ to 4½ years' imprisonment, should be reversed, on the law, and the matter remanded for a new trial.

LYNCH, J. (dissenting). I am dismayed that the majority has ignored authoritative precedent to discard a long-established custom aimed solely at better jury comprehension of the law.

While the defendant has gratuitously thrown Civil Rights Law § 12 and Judiciary Law § 4 into his papers, his argument is confined to the wellspring of his claim, US Constitution 6th and 14th Amendments. There being no controlling State decisions on the point, I would affirm on the authority of *United States v Romano* (684 F2d 1057, *cert denied* 459 US 1016). The majority casually dismisses this case by observing that a lower Federal court Judge in *Latzer v Abrams* (602 F Supp 1314, 1322, n 11) mused that "in light of *Waller (supra)* and *Press-Enterprise (supra)*", "*Romano* might 'deserve reconsideration' by the Second Circuit". It is worthy of note that the Judge himself did not find *Waller v Georgia* (467 US 39) and *Press-Enterprise Co. v Superior Ct. of Cal.* (464 US 501) distinguishing and he followed *Romano*. It is also worthy of note that the Second Circuit has not reconsidered *Romano*. I, like the *Romano* court, find the defendant's claim frivolous.

MURPHY, P. J., ROSENBERGER and ELLERIN, JJ., concur with WALLACH, J.; LYNCH, J., dissents in an opinion.

Judgment, Supreme Court, New York County, rendered on April 22, 1983, reversed, on the law, and the matter is remanded for a new trial.