■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRANDON G. RACINE, Appellant.—Yesawich, Jr., J. Appeal from a judgment of the County Court of Clinton County (Feinberg, J.), rendered December 4, 1986, upon a verdict convicting defendant of the crime of manslaughter in the second degree.

Defendant's conviction arises out of a motor vehicle accident at approximately 9:20 P.M. on February 20, 1986. Two cars, heading in opposite directions on Route 9 near the Town of Peru, Clinton County, collided in the southbound lane of this two-lane highway, causing fatal injuries to the driver of the southbound vehicle. His passenger and fiancée sustained serious injuries as did the driver of the northbound car, defendant herein, who due to head injuries was rendered amnesiac as to the events surrounding the incident.

Viewing the evidence in a light most favorable to the People, as we are obliged to *(People v Kennedy,* 47 NY2d 196, 203), the conviction must stand. That evidence indicates that the accident occurred as defendant, proceeding north and in the course of passing another car, crossed a double solid line on a blind curve at a high rate of speed and while in the southbound lane struck the victim's car with sufficient force to drive that car, which was traveling at approximately 50 to 55 miles per hour, northbound 48 feet. Defendant's car then continued in a northeasterly direction for almost 200 feet. The

force of the collision was such that both cars were demolished. Not without significance, the pavement was dry yet there were no skid marks. More importantly, unlike any of the other vehicles even remotely involved in this accident, it does not appear that defendant took any evasive action whatsoever; he neither braked his vehicle nor attempted to avoid the inevitable impact in the middle of the victim's lane of travel.

The driver of the car which defendant passed just prior to the accident, Leo Laurin, who had slowed to provide defendant additional room in which to return to the northbound lane, estimated defendant's speed as in excess of 65 or 70 miles per hour. Laurin's passenger, his wife, confirmed that they were traveling at approximately 50 miles per hour and, while she could not estimate defendant's speed in miles per hour, she opined that he was traveling above the posted speed limit and "a great deal faster than we were". Although defendant takes issue with the admissibility of the Laurins' opinions respecting the speed of his car, namely that a proper foundation for this testimony had not been laid, it has been authoritatively stated that "any person of ordinary intelligence and experience, having had the opportunity of observation, may testify to the speed of such vehicles" (Richardson, Evidence § 364 [j], at 333 [Prince 10th ed]). Mr. Laurin, a licensed driver for 11 years, testified that he had from time to time observed other cars upon the highway and estimated their speeds. His wife, who had been driving for seven years, testified to similar experience. An adequate foundation having been laid, their opinions as to the speed of defendant's car were properly admitted.

Also unavailing are defendant's contentions that prosecutorial misconduct during the People's summation and errors in County Court's charge warrant reversal. Examination of the prosecutor's summation discloses that while commenting on the evidence he argued what inferences the jury should draw from that evidence. He did not impugn a witness by interposing his own personal knowledge or offer his own testimony or make inflammatory observations. Even if we were to assume the prosecutor's comments were inappropriate in some regard, they in no way approached the pervasive level of flagrancy required for reversal on this ground (see, People v Demming, 116 AD2d 886, lv denied 67 NY2d 941).

Nor do we find convincing the various criticisms leveled at County Court's charge. Reference to sections of the Vehicle and Traffic Law and the rules of the road was pertinent in that it apprised the jury of the duty and obligations imposed

upon a motorist undertaking to pass another motor vehicle, at a curve, on a two-lane highway with clearly marked lanes of travel. And since defendant during his own testimony admitted spending the earlier part of the evening at a tavern and having at least one drink, and an officer at the accident scene detected an odor of alcohol about defendant, County Court's reference to voluntary intoxication in the course of defining the term "recklessly" (Penal Law § 15.05 [3]) was not inappropriate.

On appeal, for the first time, defendant argues that his constitutional right guaranteed by the 6th Amendment was violated when County Court ordered the doors locked during its charge to the jury. Support for this proposition is found in *People v Venters* (124 AD2d 57). There, "defendant requested, on the record, that the courtroom doors remain unlocked" during the charge *(supra,* at 58). On appeal the First Department, with one Justice dissenting, concluded that this time-honored practice, per se, amounted to constitutional error, obviating any need by defendant to demonstrate prejudice, and remanded for a new trial. Defendant urges us to follow *Venters.*

Preliminarily we note that defendant did not object at trial to closure or request that the courtroom doors remain unlocked during the charge. Normally this would preclude our consideration of the merits of this argument; we elect, however, to address this issue in the interest of justice.

The only apparent restriction on free access to the courtroom during defendant's trial occurred when County Court instructed the jury. Then, those in the courtroom were not at liberty to leave and those not present at the outset of the charge were not at liberty to enter until the court concluded its charge. No one, press or public, was excluded, but those wishing to hear the charge were expected to be in the courtroom before the charge began. Closing the courtroom during this limited period has a laudable and salutary purpose, it minimizes distractions and the risk of jury miscomprehension or error. Given that the court's charge in a criminal proceeding is of "supreme" and "singular importance" in ensuring a fair trial *(People v Owens,* 69 NY2d 585, 589-590), in our judgment closure during the charge was a reasonable limitation upon and did not violate defendant's right to a public trial *(see, United States v Romano,* 684 F2d 1057, 1065, *cert denied* 459 US 1019; *People v Hinton,* 31 NY2d 71, 73).

We do find merit, however, in defendant's claim that the sentence imposed, the maximum authorized by statute, 5 to 15

years' imprisonment, was harsh and excessive. The presentence report indicates that this was defendant's first adult arrest. While his prior criminal history is not without blemish, the infractions were comparatively insignificant and took place while he was a teen-ager. Moreover, he does not have any prior history of moving traffic violations (cf., *People v Donnelly,* 103 AD2d 941, 942). We therefore deem a reduction of the sentence to 2⅓ to 7 years' imprisonment appropriate.

Judgment modified, as a matter of discretion in the interest of justice, by reducing the sentence to an indeterminate prison term, the maximum of which shall be 7 years and the minimum 2⅓ years, and, as so modified, affirmed. Mahoney, P. J., Kane, Casey, Yesawich, Jr., and Harvey, JJ., concur.