OPINION OF THE COURT
Alexander, J.
The principal question presented by this appeal is whether locking the courtroom doors during the Trial Judge’s charge to the jury — thereby precluding access to those who arrive after commencement of the charge, and prohibiting those who have elected to stay from leaving during its delivery — violates defendant’s constitutional right to a public trial.
Defendant was charged with criminal sale and possession of cocaine arising out of an undercover drug investigation in February 1983. After the close of evidence, and prior to the court’s charge to the jury, defense counsel inquired of the court whether it intended to close the courtroom during the charge. The Trial Judge responded that he would, as it was his practice, lock the courtroom doors at the time instructions were to begin — requiring those wishing to attend to remain for the duration of the charge — so that the jury would not be distracted by spectators coming and going. Defense counsel objected, arguing that this "sealing” of the courtroom violated defendant’s right to a public trial. Defendant was subse *413 quently convicted of criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]) and criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]).
The Appellate Division, Second Department, affirmed defendant’s conviction without reference to the issue which had not been briefed to that panel. Subsequently, the First Department ruled, in People v Venters (124 AD2d 57, appeal dismissed 70 NY2d 658), that "courtroom closure during the charge in a criminal case, however hoary and time-honored such a practice may be, does not pass constitutional or statutory muster” (People v Venters, 124 AD2d 57, 58, supra). Citing Venters, defendant moved for reargument. That motion was denied, and defendant was granted leave to appeal by a Judge of this court.[1] For the reasons that follow, we conclude that defendant’s constitutional rights were not violated and therefore affirm the order of the Appellate Division.
I.
Since abolition of the Court of Star Chamber in England in 1641, the right of the accused to a public trial has become well rooted in our common-law heritage (In re Oliver, 333 US 257, 266, and n 14; see, Richmond Newspapers v Virginia, 448 US 555, 566-569; People v Jones, 47 NY2d 409; People v Jelke, 308 NY 56, 61; see generally, Radin, Right to a Public Trial, 6 Temp LQ 381). "From these early times, although great changes in courts and procedure took place, one thing remained constant: the public character of the trial at which guilt or innocence was decided” (Richmond Newspapers v Virginia, 448 US 555, 566, supra). Not only are members of the press and public extended a constitutional right of access —implicit in the First Amendment (Richmond Newspapers v Virginia, 448 US 555, 580, supra; Matter of Associated Press v Bell, 70 NY2d 32, 37) — but a defendant has the constitutional right to a public trial explicitly guaranteed in the Sixth Amendment (US Const 6th Amend ["In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial”]; see, Waller v Georgia, 467 US 39, 47). This mandate is binding on the States through the Fourteenth Amendment (see, Duncan v Louisiana, 391 US 145, 148; Matter of Oliver v *414 Postel, 30 NY2d 171, 178), and in New York, the right is further protected by statute (see, Civil Rights Law § 12; Judiciary Law § 4 [subject to certain stated exceptions the "sittings of every court within this state shall be public”]).[2]
In contrast to the secrecy and concealment of Star Chamber trials, the salutary purposes of open access to criminal proceedings are many and universally acknowledged. Exposing the judicial process to the glare of public scrutiny inspires confidence in the administration of justice and the appropriateness of judicial remedies; it ensures the integrity of the process (Globe Newspaper Co. v Superior Ct., 457 US 596, 605-606; Richmond Newspapers v Virginia, 448 US 555, 569-573, supra; People v Jones, 47 NY2d 409, 416-417, supra). More importantly perhaps, the command that criminal trials be accessible to the public is for the benefit of the accused, " ' "that the public may see he is fairly dealt with and not unjustly condemned, and the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions” ’ ” (Gannett Co. v DePasquale, 443 US 368, 380; see also, In re Oliver, 333 US 257, 270, supra ["The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse”]). It is both the fairness and the appearance of fairness that are sought. Publicity of criminal proceedings is also considered instrumental in fostering testimonial trustworthiness and in bringing notice of the proceedings to the attention of potential witnesses (People v Jelke, 308 NY 56, 63, supra; Tanksley v United States, 145 F2d 58, 59).[3]
Notwithstanding the immeasurable value to the defendant and to society of public accessibility to criminal proceedings, the mandate of a public trial has not been deemed absolute. *415 That right, whether asserted by defendant or members of the public, must be reconciled with, and at times must yield to, other important rights and interests. In order to safeguard, for example, a defendant’s equally fundamental rights to a fair trial and an impartial jury, it has been recognized that a court may exclude spectators from certain proceedings to avoid inflammatory pretrial publicity which could taint potential jurors (Press-Enterprise Co. v Superior Ct. [Press-Enterprise II], 478 US 1 [preliminary hearings]; Waller v Georgia, 467 US 39, supra [suppression hearings]; Press-Enterprise Co. v Superior Ct. [Press-Enterprise I] 464 US 501 [jury selection]; Matter of Associated Press v Bell, 70 NY2d 32, 38, supra [suppression hearings]; Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430, 438 [pretrial mental competency hearings]). Similarly, the public may be excluded from a portion of the trial to protect the identity of an undercover agent (see, e.g., People v Hinton, 31 NY2d 71, 73), or to enable a child or emotionally disturbed witness to testify (see, e.g., Globe Newspaper Co. v Superior Ct., 457 US 596, supra [child victim of sex crime]; People v Hagan, 24 NY2d 395). These exceptions notwithstanding, the presumption of openness is not easily overcome: a closure order must be based upon specific findings that closure is necessary to preserve an overriding interest and is narrowly tailored to serve that interest (Press-Enterprise II, 478 US 1, 13-14, supra; Walter v Georgia, 467 US 39, 45, supra; Press-Enterprise I, 464 US 501, 510, supra; Matter of Associated Press v Bell, 70 NY2d 32, 38, supra).
Relying on these principles and on People v Venters (124 AD2d 57, supra), defendant challenges the closing of the courtroom doors during the court’s charge to the jury, over defense objection, as violating his constitutional right to a public trial. In Venters, the First Department concluded that locking the doors during instructions for the single purpose of avoiding potential distraction violated a defendant’s right to a public trial. That court found that the "very importance of the jury charge * * * is itself an argument for its immediate accessibility to the public” (People v Venters, 124 AD2d 57, 60, supra). Moreover, defendant argues, if the jury is distracted during the charge, that portion of the charge is easily repeated, whereas if jurors were distracted during the testimony of a key witness, reenactment of a response or a facial expression is not so readily accomplished. Accordingly, defendant urges the adoption of less onerous alternatives to address *416 the concern of disruption as, for example, a sign posted outside the courtroom, or courtroom personnel stationed near the door, to assure unobtrusive entry and exit. Contending that there are no unusual circumstances necessitating closure in this case, and that the charge to the jury, in general, is not so unique a phase of the trial as to justify routine closure of the doors, defendant concludes that the hypothetical risk of distraction is insufficient and too speculative to overcome his right to insist on open doors.
Defendant’s premise, however, that locking the courtroom doors during the charge to the jury results in a "closure” of the proceedings, does not withstand analysis. Unlike orders explicitly excluding members of the public, the trial court’s action here does not explicitly exclude anybody and is designed solely to regulate the ingress and egress of the spectators. The right to a public trial has always been recognized as subject to the inherent power of trial courts to administer the activities of the courtroom; suitably within the trial court’s discretion is the power to monitor admittance to the courtroom, as the circumstances require, in order to prevent overcrowding, to accommodate limited seating capacity, to maintain sanitary or health conditions, and generally to preserve order and decorum in the courtroom (People v Glover, 60 NY2d 783; People v Jelke, 308 NY 56, 63, supra; People v Miller, 257 NY 54, 60). Locking the doors during the charge to avoid disruption — allowing those already present to remain— does not seek to exclude the public or frustrate the salutary purposes of public scrutiny. Here, members of the press or public were permitted to attend the charge to the jury, upon the condition that they arrive at the beginning of the court’s delivery and not leave until instructions had been completed.
Focusing on the tardy spectator, defendant nevertheless insists that locking the doors during the charge is the functional equivalent of a "closure” with respect to that spectator. This argument, however, would render a "closure” any restriction on admittance to the courtroom, even for example, because of limited seating capacity.[4] Rather, we view the Trial Judge’s action here as a reasonable restriction upon the time *417 and manner of public access to the trial (see, United States v Romano, 684 F2d 1057, 1065). "Just as a government may impose reasonable time, place, and manner restrictions upon the use of its streets in the interest of such objectives as the free flow of traffic, so may a trial judge, in the interest of the fair administration of justice, impose reasonable limitations on access to a trial” (Richmond Newspapers v Virginia, 448 US 555, 581, n 18, supra [citations omitted]). Those cases requiring no less onerous alternative and "specific findings” made on the record to warrant a closure of the proceedings are therefore inapplicable (see, Waller v Georgia, 467 US 39, 45, supra; Press-Enterprise I, 464 US 501, 510, supra; Matter of Associated Press v Bell, 70 NY2d 32, 39, supra). So long as the time and manner restriction on admission is a reasonable one, it should be upheld against defendant’s Sixth Amendment challenge.
The charge to the jury is a solémn and comparatively complex phase of the trial requiring precision and concentration on the part of both the jury and the Trial Judge. Although it is no more critical to defendant’s guilt or innocence, for example, than the testimony of a principal witness, the charge is of special significance. It is during the charge that the jury is instructed on the law applicable to the case, the time they must master often difficult and interrelated principles — principles not usually within their ken — that may be determinative of the outcome. The discourse is imbued with terms not immediately comprehensible, requiring definition, repetition and context. Moreover, the charge, by its nature, occupies the Trial Judge’s full attention placing him or her in a particularly disadvantageous position to police the goings-on in the courtroom. Thus, it cannot be said to be an unreasonable limitation on public access — after inviting all those present to remain — to lock the doors so that the charge may be conveyed without disruption. Indeed, incessant interruptions during the charge could very well give rise to repeated requests for supplemental instructions. We reach no conclusion with respect to the propriety of routinely locking the doors during other portions of the trial, or indeed for the duration of the proceedings between recesses (see, State v Robillard, 146 *418 Vt 623, 508 A2d 709 [routine practice of locking doors after commencement of actual trial proceedings until recess is error]; People v Micalizzi, 223 Mich 580, 194 NW 540).
In sum, we conclude that a Trial Judge’s order to lock the courtroom doors during the charge to the jury, permitting all those who have timely arrived to remain in the courtroom, is not intended to exclude members of the public and does not constitute a "closure” of the proceedings. Rather, it is designed to control the flow of traffic into and out of the courtroom during a unique portion of the trial where the jurors must absorb and master the applicable legal principles and the Trial Judge is singly devoted to assuring comprehension of these principles. The decision to do so is within the discretion of the Trial Judge to assure tranquility and order in the courtroom. We hold, therefore, that the locking of courtroom doors during the charge to the jury — preventing only tardy spectators from entering the courtroom during this time —does not deprive defendant of his constitutional right to a public trial.
II.
Claiming a deprivation of his rights to due process and an impartial jury, defendant also assigns error to the trial court’s refusal to grant a challenge for cause of a prospective juror who had four close relatives on the police force. Citing CPL 270.20 (1) (b) and the prospective juror’s expurgatory oath, the trial court denied the challenge, and defendant resorted to his last peremptory challenge. Defendant contends that the prospective juror had a sufficiently suspect relationship with the police force and the People’s witnesses — all of whom were police officers — to render him inherently biased and justify disqualification for cause under CPL 270.20 (1) (c) and People v Branch (46 NY2d 645 [expurgatory oath not applicable where suspect relationship involved]; see also, People v Provenzano, 50 NY2d 420). The contention is without merit. The prospective juror did not bear a relationship to any of the testifying police officers that falls within the enumerated relationships of CPL 270.20 (1) (c), and the fact that he had relatives in the same profession as the witnesses for the District Attorney, in and of itself, cannot be said to likely preclude an average juror from rendering an impartial verdict within the meaning of that provision (CPL 270.20 [1] [c]; People v Provenzano, 50 NY2d 420, 425, supra). Absent evi *419 dence that this particular prospective juror would not have been impartial, and in view of the prospective juror’s expurgatory oath, the trial court cannot be said to have abused its discretion as a matter of law in refusing the challenge for cause.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Wachtler and Judges Simons, Kaye, Hancock, Jr., Bellacosa and Dillon* concur.
Order affirmed.

. Although abandoned on defendant’s direct appeal to the Appellate Division, we may reach the issue as it was preserved at trial (CPL 470.35 [1]).

. The Supreme Court has noted that "almost without exception every state by constitution, statute, or judicial decision, requires that all criminal trials be open to the public” (In re Oliver, 333 US 257, 267-268 [footnotes omitted]). New York is one of the few States that does not guarantee the right in its State Constitution but by statute (see, In re Oliver, 333 US 257, 268, n 18, supra; People v Jelke, 308 NY 56, 62).

. Additionally, in Richmond Newspapers v Virginia (448 US 555, 571), the Supreme Court identified a therapeutic value to the publicity of judicial proceedings: "When a shocking crime occurs, a community reaction of outrage and public protest often follows * * * Thereafter the open processes of justice serve an important prophylactic purpose, providing an outlet for community concern, hostility, and emotion”, thereby discouraging vengeful self-help.

. The States that have addressed the issue appear to be split not only on whether locking the courtroom during the charge constitutes a violation of the public trial right, but if so, whether such error is reversible (see, Renfroe v State, 49 Ala App 713, 275 So 2d 692 [locking doors during charge within trial court’s discretion]; People v Buck, 46 Cal App 2d 558, 116 P2d 160 [not error to lock doors during charge to avoid disruption]; State v *417 Lawrence, 167 NW2d 912 [Iowa] [locking doors during charge constitutes error]; People v Micalizzi, 223 Mich 580, 194 NW 540 [reversible error to lock doors during charge]; State v Robillard, 146 Vt 623, 508 A2d 709 [harmless error to routinely lock doors]).

 Designated pursuant to NY Constitution, article VI, § 2.