BENTON, J.
On direct appeal from his conviction and sentence for second-degree murder with a *1096 firearm, Louis McCrae argues that his Sixth Amendment right to a public trial was violated when the trial court ordered the courtroom doors locked. We affirm.
After a recess, before proceedings resumed, the trial judge announced: “We’ll wait for everybody to come back in who wants to be here.” He explained, “I’m locking the doors because I don’t want any more traffic coming back and forth.” He told persons already in the courtroom that they would be allowed to come and go at the next recess, but not before.
Mr. McCrae argues that, before interfering in this fashion with ingress to the courtroom, there should have been a hearing of the kind required by Waller v. Georgia, 467 U.S. 39, 48, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984),[1] where, during a suppression hearing, everyone was required to leave the courtroom, except witnesses, court personnel, the parties, and their lawyers. Id. at 42, 104 S.Ct. 2210. The Waller Court held that the complete closure of the courtroom to most spectators required analysis under a four-part test, in order to assure a defendant’s Sixth Amendment right to a public trial. Id. at 48, 104 S.Ct. 2210.
But here, Mr. McCrae makes no allegation that anyone was, in fact, excluded, and, as far as can be told by the record, no one was. In the present case, any member of the public in the courtroom when the proceedings resumed was allowed, indeed, required to observe the ensuing proceedings, until ingress and egress were allowed during the next recess.
Trial judges have broad authority to manage their courtrooms so that the people’s business may be conducted fairly, efficiently, and expeditiously. Rose v. Palm Beach County, 361 So.2d 135, 136 n. 3 (Fla.1978); cf. People v. Colon, 71 N.Y.2d 410, 526 N.Y.S.2d 932, 521 N.E.2d 1075, 1079 (1988) (“[A] trial judge [may] in the interest of the fair administration of justice, impose reasonable limitations on access to a trial.”) (quoting Richmond Newspapers v. Virginia, 448 U.S. 555, 581 n. 18, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980)). Controlling ingress and egress to the courtroom in the manner the trial court did below is not a “closure,” but a “reasonable restriction upon the time and manner of public access to the trial.” Colon, 526 N.Y.S.2d 932, 521 N.E.2d at 1079-80. Disruption may interfere with a spectator’s attention, or a participant’s performance, at public events of many kinds.[2] To avoid such disruption, time and manner restrictions on ingress and egress may be necessary in a particular case.[3]
*1097 Similar measures have been approved m other jurisdictions. See generally People v. Woodward, 4 Cal.4th 376, 14 Cal.Rptr.2d 434, 841 P.2d 954, 958 (1992) (holding right to a public trial is not violated when courtroom doors are locked, where “members of the public were present” and “additional spectators were permitted to enter the courtroom during specified recesses”); Spencer v. Commonwealth, 240 Va. 78, 393 S.E.2d 609, 614 (1990) (holding “there is no constitutional violation where members of the public and the news media are actually in attendance, having entered before” the locking of the doors); Davidson v. State, 591 So.2d 901, 903 (Ala.Crim.App.1991) (holding there is no constitutional violation where court ordered doors locked to prevent noise in hallway from disrupting the proceedings while people entered and exited the courtroom).
Affirmed.
WOLF, J., concurs; ALLEN, J., concurs in result only.

. The gravamen of Mr. McCrae’s argument is that his right to a public trial was compromised, not that physically locking the doors was somehow more objectionable than court personnel's barring entry. While locking courtroom doors may be unwise for other reasons, we need not address issues that he does not raise. See generally, e.g., Fla. Fire Prevention Code (NFPA1) R. 7.2.1.5 (2004) (pertaining to locks and latches).

. In order to avoid disruptive noise and traffic, theaters and opera houses routinely deny admittance to latecomers until an appropriate time for late entry. See generally Fine Arts Ticket Office at Florida State University Ticket Office Policies, available at http://www.tick-els. fsu.edu/Policies/ Index.htm (June 29, 2005); The Florida Theater General Information, http://www.florida theatre.com/gen info, htm (June 29, 2005); Metropolitan Opera House Frequently Asked Questions, http://www.newyork citytheatre.com/ theaters/ metropolit anoperahouse/ faqs. html (June 29, 2005) ("Latecomers will not be admitted to the auditorium until intermission or on rare occasions when the Conductor has designated an appropriate interval for seating."). Is it more important not to disturb Berg’s "Lulu” than to avoid disruption of a murder trial?

.Mr. McCrae does not contend that the trial court lacked a "substantial reason,” see Hobbs v. State, 820 So.2d 347, 349 (Fla. 1st *1097 DCA 2002), for controlling courtroom ingress and egress in the present case.