■ The People of the State of New York, Respondent, v George Lewis, Appellant.—Mikoll, J. Appeal from a judgment of the County Court of Chemung County (Castellino, J.), rendered March 17, 1989, upon a verdict convicting defendant of the crime of leaving the scene of an incident without reporting.

On this appeal defendant contends that County Court committed reversible error in that (1) the evidence obtained via a warrantless search and seizure of his pick-up truck and certain statements made by him were not suppressed, (2) the rebuttal testimony of Investigator Joseph Holley was received at trial for purposes of impeachment, (3) there was insufficient evidence to support defendant's conviction for the crime of leaving the scene of an incident without reporting, and (4) the prosecutor committed misconduct in his summation. Defendant further argues that the sentence imposed was excessive. We disagree and affirm the judgment of conviction in all respects.

At approximately 6:00 A.M. on May 8, 1988, a motorist was driving to work in a northerly direction toward the Village of Wellsburg in Chemung County when she noticed two white plastic garbage bags and what she initially thought was a rolled-up rug to her left along the shoulder of the road. As the motorist passed she noticed the body of a man, later identified as William Dougherty, on the opposite side of the guardrail. She then brought her car to a stop, returned to the scene and notified the State Police.

Subsequently, a telephone tip from an anonymous person indicating that defendant's pick-up truck had been damaged and may have been involved in a fatal hit-and-run accident in Wellsburg led State Trooper William Mayhew to defendant's home at about 8:30 P.M. on May 9, 1988 to investigate. When Mayhew received no response at the front door, he proceeded toward the side/rear door of defendant's residence. On his way to the side/rear door, Mayhew walked around to the right-hand side of defendant's driveway, where he was able, with the use of a flashlight, to observe damage to the front right headlight, fender and windshield of defendant's truck. After then receiving a response at the side/rear door, Mayhew spoke with defendant and asked him how he had damaged his truck. Defendant replied that he had struck a deer in the Town of Horseheads, Chemung County, in the early morning hours of May 8, 1988 while driving home from the Elks Club. In order to verify the time defendant left the Elks Club, Mayhew obtained from defendant the name of the bartender on duty that evening. At the conclusion of their conversation, defendant agreed to examine the truck in the driveway with Mayhew. Mayhew then resumed his patrol duties.

At approximately 10:30 P.M., shortly after Mayhew returned to the State Police station in Horseheads, defendant arrived and told Mayhew that the bartender at the Elks Club had reminded him that he had left between 9:30 P.M. and 10:00 P.M. on the night in question. Defendant then stated that he went to another bar where he met a friend, that they went together to a third bar and that he eventually returned alone to the Elks Club, which had subsequently closed. Defendant said that it was on his way home at that time when he struck a deer.

Early the following morning, defendant again went to the State Police station where he spoke with State Trooper Vincent Hill. Defendant told Hill that he needed to talk to somebody about the accident in Wellsburg—"[t]he guy that got hit". When Hill inquired "what about it", defendant stated that he was the one who did it. While defendant was waiting to speak to an investigator, his attorney called and indicated that he did not want defendant talking with any police officers. Defendant then left the station.

Shortly thereafter, Investigator Charles Wood arrived at the station to interview defendant and was told that defendant had left to speak with his attorney. Wood then became concerned about defendant's truck and went to defendant's home to obtain the keys to the truck for the purpose of securing it.

Because neither defendant nor his wife was at home, Wood spoke with defendant's sister-in-law who could not locate the keys. Wood then directed a tow truck to take defendant's truck to the police station, fearing that the evidence of the accident could be lost or destroyed because of the mobility of the truck or what appeared to be impending rain. The truck was eventually placed in a garage at the police station before any rain began and a search warrant was subsequently obtained.

An examination of defendant's truck for evidence revealed that glass samples from its headlight matched glass found at the accident scene and that paint scrapings from the truck's fender were identical to paint found on the victim's clothing. In addition, small fragments of Caucasian scalp hair were located imbedded in the windshield. Medical evidence later indicated that the victim sustained the injuries as the result of a motor vehicle accident and that the cause of death was an extensive depressed basilar fracture of the skull, damage to the brain and extensive aspiration of blood. In July 1988, defendant was indicted for the crime of leaving the scene of an incident without reporting, as a felony, to which he entered a plea of not guilty.

In August 1988, while Investigator Holley was fingerprinting defendant and processing the necessary paperwork, defendant apparently started a conversation with Holley wherein he stated, *inter alia,* that he had struck a man and that he had initially lied to the police.

Defendant subsequently moved to suppress all statements made by him, as well as all physical evidence obtained via the seizure and search of his truck. Following a hearing, County Court found that Mayhew's observation of the truck parked in defendant's driveway on May 9, 1988 did not constitute an illegal search and that defendant's statement the following morning to Hill was therefore not the result of illegally obtained evidence. County Court also held that Wood had probable cause to seize the truck in the absence of a warrant because of exigent circumstances and that defendant's August 1988 statement to Holley was voluntary and available for impeachment purposes.

At trial, defendant testified in his own behalf. The jury found him guilty of the crime charged and County Court sentenced him to a term of imprisonment of 1 to 4 years. This appeal ensued.

Defendant's first contention, that Mayhew's observation of

defendant's truck in his driveway amounted to a search within the meaning of the 4th Amendment for which a warrant was required, is without merit. The 4th Amendment protects legitimate expectations of privacy, rather than merely places (see, *Illinois v Andreas,* 463 US 765, 771). Mayhew's conduct, in initially examining the truck in defendant's driveway "was no more intrusive an event than ordinarily occurs during the daily incidents of life in an urban neighborhood" *(People v Crapo,* 103 AD2d 943, *affd* 65 NY2d 663). Defendant's truck, parked in front of his garage, was visible from the street and was not restricted from public view or access and, as such, defendant could not have had a legitimate expectation of privacy with respect to the exterior of his truck (see, *Katz v United States,* 389 US 347, 351; *United States v Ventling,* 678 F2d 63, 66). It was therefore reasonable for County Court to conclude that Mayhew's visual inspection of the exterior damage on defendant's truck was not a prohibited intrusion upon his legitimate expectation of privacy and consequently not a search violative of the 4th Amendment. Accordingly, defendant's subsequent consent to Mayhew to inspect the exterior of the truck was not improper and defendant's later statements were not tainted.

Defendant's assertion that the physical evidence taken from his truck was obtained as a result of a warrantless seizure in violation of his 4th Amendment right of privacy is likewise without merit. The threat of rain, which would most probably have destroyed evidence of the crime under investigation, constituted exigent circumstances permitting seizure and removal of the truck for the purpose of safeguarding evidence. At the time defendant's truck was seized, the police had probable cause to believe that defendant was the perpetrator of a crime and that the truck was the vehicle which caused the fatal injuries. The warrantless seizure was therefore justified (see, *People v Knapp,* 52 NY2d 689, 695-696; *People v Stone,* 132 AD2d 902, 903; *People v Anderson,* 127 AD2d 774, 775).

Defendant also contends that County Court improperly received rebuttal testimony of Holley for purposes of impeachment. We reject this contention. Despite defendant's contrary position, County Court properly ruled that defendant's verbal statements to Holley were voluntary and therefore admissible at trial (see, *People v Washington,* 51 NY2d 214, 220). Moreover, since Holley's rebuttal testimony involved a central issue in the case, i.e., whether defendant knew or had cause to know that he had hit a person, it was properly received by

County Court for purposes of impeaching defendant's credibility (see, *People v Cade,* 73 NY2d 904, 905; *People v Wise,* 46 NY2d 321, 328).

Defendant's next contention, that the evidence failed to establish beyond a reasonable doubt that he knew or had cause to know that personal injury had been caused to another person (see, Vehicle and Traffic Law § 600 [2] [a]) and, thus, was insufficient to support the conviction, is without merit. A review of the record in the light most favorable to the People reveals that there was evidence from which the jury could properly conclude that defendant knew or had cause to know that personal injury had been caused to another person (see, *People v Kennedy,* 47 NY2d 196, 203; *People v Montanez,* 41 NY2d 53, 57). Defendant admitted at trial that he knew that he had hit something and that based upon the damage to his truck, he thought that it was a deer. The physical evidence obtained from defendant's truck, particularly the Caucasian scalp hair from the right windshield, allowed the jury to reasonably conclude that the victim's head hit the windshield and that defendant at least had cause to know that he had hit a person. Moreover, defendant's initial false statements to the police, his inconsistent explanations of how the accident happened, his attempt to create a false alibi and his subsequent confession all permitted a reasonable person to infer that defendant was conscious of his guilt and that he therefore knew or had cause to know that personal injury was caused to another person (see, Richardson, Evidence § 167, at 134 [Prince 10th ed]).

We also reject defendant's argument that the prosecutor's summation was so improper and prejudicial to defendant as to require reversal. In our view, the comments of the prosecutor were on the whole made in fair response to issues and arguments raised by defense counsel during his summation and were not improper or prejudicial (see, *People v Ashwal,* 39 NY2d 105, 111; *People v Spruill,* 110 AD2d 981). In any event, the conduct of the prosecutor here did not rise to the level of flagrancy required for reversal (see, *People v Racine,* 132 AD2d 899, 900).

Finally, defendant's claim that the sentence imposed was unduly harsh and excessive is also rejected. The record reveals that County Court considered the various factors relevant to sentencing (see, *People v Farrar,* 52 NY2d 302, 305-306). Although the court imposed the maximum allowable sentence and defendant's prior involvement with the law was of a minor nature, defendant has not demonstrated that in the

circumstances of this case County Court abused its discretion in imposing the sentence in dispute. In the absence of a clear abuse of that discretion, this court will not disturb the sentence imposed (see, *People v Du Bray,* 76 AD2d 976, 977).

Judgment affirmed. Kane, J. P., Weiss, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.