■ The People of the State of New York, Respondent, v Paul Durgey and David Corbitt, Appellants.—Casey, J. Appeal from a judgment of the County Court of St. Lawrence County (Nicandri, J.), rendered January 22, 1991, upon verdicts convicting defendants of the crimes of criminal possession of stolen property in the third degree and burglary in the third degree.

Defendants' convictions arise out of the theft of cash, checks and food stamps from a grocery store in the Village of Potsdam, St. Lawrence County, on November 21 or 22, 1989. Defendants' vehicle was stopped by State Police during the early morning hours of November 22, 1989 in the Town of Parish, Oswego County. The driver of the vehicle, defendant David Corbitt, was issued a ticket for speed not reasonable and prudent under conditions (see, Vehicle and Traffic Law § 1180 [a]). According to State Trooper Michael Pastuf, Corbitt consented to a search of his vehicle and during the course of this search he and State Trooper William Slater discovered a bag full of money, prompting defendants to speed away in the vehicle. It was later determined that the bag contained the fruits of the crimes committed at the grocery store in Potsdam.

Defendants contend that the initial stop of their vehicle, their subsequent detention after the ticket was issued and search of their vehicle were all illegal. Based upon our review of the suppression hearing record, we reject these claims.

Defendants argue that the Troopers lacked probable cause to stop defendants' vehicle for speed not reasonable and prudent in Parish. According to defendants, the only evidence

concerning the vehicle's speed in Parish is that it slid past an exit on Interstate Route 81 by about 60 feet, backed up and proceeded onto the exit ramp. Defendants maintain that in light of the snow, which made the road slippery and visibility poor, the mere fact that the vehicle slid 60 feet past the exit is insufficient to establish unreasonable speed. Pastuf, however, testified that he and Slater had observed the vehicle traveling at a high rate of speed for some 17 miles prior to the stop. At one point, they obtained a radar reading of 64 miles per hour on the vehicle. According to Pastuf, 30 miles per hour was fast for the weather conditions.

The police can stop a vehicle when they reasonably suspect a violation of the Vehicle and Traffic Law, and there is no requirement that the violation be substantial (People v Hoffman, 135 AD2d 299, 301). "All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity. It is enough if the stop is based upon 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion' " (People v Ingle, 36 NY2d 413, 420, quoting Terry v Ohio, 392 US 1, 21). The standard was clearly met in this case (compare, People v Osborne, 158 AD2d 740, 742, lv denied 75 NY2d 968, with People v Letts, 180 AD2d 931, lv granted 79 NY2d 1051).

Defendants' next claim is that the Troopers exceeded the bounds of a normal traffic stop by detaining the vehicle's occupants beyond the time necessary to issue the ticket. The propriety of the police conduct in these circumstances is to be measured by the reasonableness standard, which requires a weighing of the degree of intrusion against the precipitating and attending circumstances (see, People v Sora, 176 AD2d 1172, 1173, lv denied 79 NY2d 864). According to testimony in the suppression record, defendants were detained for a total of 10 to 12 minutes from the time the vehicle was stopped until it sped off. During this period, the Troopers obtained the driver's license and vehicle's registration, conducted a field sobriety test on the driver, and returned to their vehicle to check the license and registration and to write the ticket. Pastuf testified that after he and Slater returned to their vehicle to write the ticket, they discussed the fact that the passenger, defendant Paul Durgey, had a large duffle bag between his legs, where it would be uncomfortable, despite the fact that the back seat was entirely empty. The Troopers were also aware that Corbitt had received a ticket in the Town of Williamson, Wayne County, on November 21, 1989. According to Pastuf, after returning to defendants' vehicle and handing

the ticket to Corbitt, Pastuf asked Corbitt where he and Durgey had been; Corbitt responded that they had been in the City of Watertown, Jefferson County for three days visiting friends, but Pastuf stated that Corbitt was very hesitant about providing details such as where the friends lived. Recognizing that defendants could not have been in both Williamson and Watertown at the same time and already suspicious about the manner in which the duffle bag was stuffed under Durgey's legs, Pastuf asked Corbitt for permission to search the car and the trunk. In these circumstances, which distinguish this case from *People v Milaski* (62 NY2d 147), and in view of the minimal intrusion, we find nothing improper in the police conduct leading up to the request for permission to search the vehicle *(see, People v Sora, supra)*.

Turning to the propriety of the search itself, the issue depends upon whether Corbitt voluntarily consented to the search *(see, People v Bapp,* 149 AD2d 804, 805, *lv denied* 74 NY2d 736). The question of voluntary consent depends largely upon the credibility of two witnesses at the suppression hearing: Pastuf, who testified that Corbitt consented to the search, and Corbitt, who testified that he did not give the Troopers permission to search the inside of the vehicle. Defendants challenge the scope of the search, suggesting that if Corbitt did consent to any search it was limited to the trunk. When questioned about the scope of his request, Pastuf testified that he asked to search both in the trunk and in the vehicle and that Corbitt consented. A review of Pastuf's testimony in its entirety establishes that it was neither incredible as a matter of law nor patently tailored to avoid constitutional objections, and we see no basis for disturbing County Court's decision following the suppression hearing to credit Pastuf's testimony over that of Corbitt *(compare, People v Bapp, supra,* at 805, *with People v Miret-Gonzalez,* 159 AD2d 647, 649-650, *lv denied* 76 NY2d 739).

Defendants also assert a double jeopardy argument based upon their reprosecution after a mistrial was declared during their first trial when the jury announced its inability to reach a verdict. We see no basis for disturbing County Court's determination that the jury was deadlocked *(see, People v. Baptiste,* 72 NY2d 356, 360), and inasmuch as defendants' attorneys both requested a mistrial after they were advised of the options (an *Allen* charge *[Allen v United States,* 164 US 492], overnight sequestration of the jury or a mistrial), reprosecution was proper *(see, People v Kurtz,* 51 NY2d 380, 386, *cert denied* 451 US 911). Defendants' claim that their trial

attorneys were effectively forced into acquiescing in the mistrial by County Court's conduct is meritless.

Defendants claim that County Court erred in permitting testimony about the straps which were around the currency that was found in defendants' possession. The money was returned to the grocery store prior to trial and the straps were apparently destroyed. Although the People notified defendants of the grocery store's request for the return of the property (see, Penal Law § 450.10), the notice did not separately list the money straps. According to defendants, the failure to list the money straps as separate items in the notice violated the requirement of Penal Law § 450.10 and, because the straps contained dates and initials written on them by employees of the store prior to the theft, they constituted *Rosario* material (*People v Rosario*, 9 NY2d 286) which should have been disclosed. Defendants were notified of the store's request for the return of the money and had they arranged to examine the money (see, Penal Law § 450.10 [1]), the straps around that money would also have been available for examination. Accordingly, we see no violation of the letter or spirit of Penal Law § 450.10 in the failure to include a separate listing of the money straps in the notice. The straps, which contained no factual account or description of events, were not *Rosario* material (see, *People v Melendez*, 178 AD2d 366, 367, *lv denied* 79 NY2d 950), and County Court's instruction to the jury concerning the People's failure to preserve the straps minimized any potential prejudice to defendants.

Defendants' remaining contentions do not require extended discussion. No prejudice has been shown to have arisen out of one juror's inadvertent observation of defendants in shackles as they were being transported back to the court during a recess, and we find nothing inherently prejudicial in such an isolated incident (see, *People v Harper*, 47 NY2d 857, 858). The comments by the prosecutor during summation were either entirely proper or not so flagrant as to require reversal (see, *People v Lewis*, 162 AD2d 760, 764, *lv denied* 76 NY2d 894). County Court's charge to the jury regarding the presumption which arises from the recent, exclusive and unexplained possession of the fruits of a burglary was correct (see, 1 CJI[NY] 9.80, at 564-571), and we reject defendants' claim that the presumption cannot arise when the burglary occurs in one county and defendants are found in possession of the fruits of that burglary in an adjoining county. The record refutes defendants' claims that they were denied the effective assis-

tance of counsel, that the verdict was against the weight of the evidence and that the evidence was legally insufficient.

Defendants' final claim, that the sentences are harsh and excessive, is rejected. Corbitt was sentenced as a second felony offender to concurrent prison terms of 3½ to 7 years, and Durgey was sentenced as a second felony offender to concurrent prison terms of 3 to 6 years. Both defendants have lengthy criminal histories and both were on parole at the time they committed the crimes at issue. In these circumstances, we see no basis for disturbing the sentences imposed by County Court.

Mikoll, J. P., Levine, Mahoney and Harvey, JJ., concur. Ordered that the judgment is affirmed.