People v Tromans (2019 NY Slip Op 08454)





People v Tromans


2019 NY Slip Op 08454


Decided on November 21, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 21, 2019

110921

[*1]The People of the State of New York, Respondent,
v
Brian R. Tromans, Appellant.

Calendar Date: October 9, 2019

Before: Garry, P.J., Mulvey, Devine and Aarons, JJ.


Kindlon Law Firm, Albany (Lee C. Kindlon of counsel), for appellant.
P. David Soares, District Attorney, Albany (Emily Schultz of counsel), for respondent.



Mulvey, J.
Appeal from a judgment of the Supreme Court (McDonough, J.), rendered February 9, 2018 in Albany County, upon a verdict convicting defendant of the crimes of leaving the scene of an incident without reporting and tampering with physical evidence.
At approximately 4:30 a.m. on a lightly snowing January morning, defendant drove his vehicle into the victim, killing him almost instantly, then drove home. Defendant failed to report the incident, claiming that he believed he had struck a deer. He subsequently parked the vehicle at his parents' house while waiting for replacement car parts. At a trial related to this incident, Supreme Court dismissed a charge of criminally negligent homicide, but the jury convicted defendant of leaving the scene of an incident without reporting and tampering with physical evidence. The court sentenced defendant to consecutive prison terms of 2&frac13; to 7 years for his conviction of leaving the scene of an incident without reporting and 1&frac13; to 4 years for his conviction of tampering with physical evidence. Defendant appeals.
To determine whether a verdict is against the weight of the evidence, this Court must first "decide whether, based on all the credible evidence, a different finding would not have been unreasonable," and then, viewing the evidence in a neutral light and deferring to the jury's credibility assessments, "weigh the relative probative force of the conflicting testimony and the relative strength of the conflicting inferences that may be drawn from the testimony" (People v Nunes, 168 AD3d 1187, 1188 [2019] [internal quotation marks and citations omitted], lv denied 33 NY3d 979 [2019]). Regarding the conviction of leaving the scene of an incident without reporting, defendant acknowledges that the evidence established that he was operating a motor vehicle that struck and killed the victim, and that defendant did not report the incident to the police. The only element he challenges is whether he knew or had "cause to know that personal injury has been caused to another person," so as to trigger his responsibility to report the incident (Vehicle and Traffic Law § 600 [2] [a]).
Defendant testified that the area was not well lit, intermittent snow squalls affected visibility, and he was paying attention to the road ahead of him and was not distracted when he saw a flash out of the corner of his eye and heard a bump. He then stopped and looked in his mirrors and out each window but saw nothing except a dent in his hood. He did not get out of the vehicle to look at the damage or for what he had hit, or even shift his vehicle into park. Based on his prior experience having hit a deer, he assumed that he clipped a deer, which then ran back into the woods.
Several witnesses testified that the area was well lit by street lights, including one above the spot where the impact occurred. Testimony of witnesses who were in the area within minutes, as well as video from a business approximately one mile away, demonstrated that only light flurries were in the air and they did not greatly affect visibility. Physical evidence demonstrated that defendant's headlights were working well, the road was flat and straight with no obstructions, and the victim was wearing a red fleece jacket and standing or walking slowly in the road at the time of the incident. An officer trained in accident reconstruction testified that defendant would have had 585 feet of visibility before the impact and, if defendant was traveling 38 miles per hour in the 40 mile-per-hour speed zone, defendant would have seen the impact zone for approximately 10 seconds and the victim would have taken a minimum of five seconds to walk from the side of the road to the impact zone in defendant's lane of travel.
The damage to defendant's grill and hood indicated that the victim was standing and was hit in the middle of the vehicle. The headlights and side panels had no damage, contradicting defendant's assertion that he clipped an animal coming from the side. Additionally, the trained officers testified that the damage from a deer would be wider. Dents in the hood indicated that the victim's body hit in the center, then his head hit closer to the windshield, directly in front of where defendant was sitting. Further, defendant separately told a police officer and a family friend that he had hit a deer in a town in a neighboring county, not the location where the victim was hit. Despite defendant's testimony that these witnesses were mistaken and that he did not make such a statement, it seems unlikely that two unrelated witnesses would mistakenly hear the same thing from defendant. Although it would not have been unreasonable for the jury to reach another conclusion, especially if they believed defendant's testimony, when viewing the evidence in a neutral light and deferring to the jury's credibility determinations, the weight of the evidence supports the conviction for leaving the scene of an incident without reporting (see People v Lentini, 163 AD3d 1052, 1053-1054 [2018]; People v Williams, 150 AD3d 902, 902-903, 905 [2017], lv denied 29 NY3d 1038 [2017]; People v Lewis, 162 AD2d 760, 764 [1990], lv denied 76 NY2d 894 [1990]).
As relevant to the charge of tampering with physical evidence, the People had to prove that defendant, "[b]elieving that certain physical evidence [was] about to be produced or used in an official proceeding or a prospective official proceeding, and intending to prevent such production or use,
. . . suppresse[d] it by any act of concealment, alteration or destruction" (Penal Law § 215.40 [2]). A few hours after the incident, defendant called a family friend who ran an automotive supply business and asked him for quotes on parts to repair his vehicle. Defendant and his father had previously worked on vehicles, and defendant intended to do so again to save money. Early that afternoon, defendant drove his vehicle from his home in the City of Albany to the friend's house, approximately half an hour away. The friend looked at the vehicle and opined that defendant needed a new hood and grill, but also some internal parts that were broken and could affect the coolant system and air intake. In defendant's presence, the friend wrote down defendant's vehicle identification number to assure that he ordered the correct parts for that vehicle. The friend testified that he cautioned defendant not to drive the vehicle until the internal parts were fixed, and that defendant wanted him to order the external parts but "[n]ot to worry" about the internal parts. Defendant then drove his vehicle to his parents' rural home, just down the road from the friend. Defendant left the vehicle there, by the garage where he and his father work on vehicles, and borrowed his father's truck to use until defendant's vehicle was repaired. Defendant's father later moved the vehicle next to the garage, where he normally parked his truck. The next day, the friend obtained quotes on all the parts, including the internal parts, and defendant asked him to order them all. The friend expected the parts to arrive within four days, but defendant's father later asked him to cancel the order. Computer evidence and defendant's testimony established that he located some parts, including the hood, online for a lower price and decided to purchase them directly himself; the hood was not scheduled to be delivered until approximately two weeks after the incident. Police officers located a box of broken pieces from the vehicle in the parents' garage; defendant testified that he kept them in case any clips or attachments were needed to do the repairs.
It would not be unreasonable for the jury to have reached a different result on this charge. Although it could be inferred that defendant believed that the vehicle or its damaged parts would be produced in an official proceeding against him, the evidence did not prove beyond a reasonable doubt that he suppressed the vehicle or its damage by concealment, alteration or destruction with the intent to prevent such production. Defendant did not hide or throw away the box of broken parts, which would have destroyed or concealed them, but left them near the vehicle. When bringing the damaged vehicle to show it to the friend who could order new parts, defendant drove on busy public highways during daylight hours. Defendant did not put the vehicle inside the parents' three-bay garage or cover it in any way. The People assert that defendant moved the vehicle from his home in a city to a more rural area to conceal it. Yet an equally logical explanation for that move would be that defendant traveled to see the friend — who lived down the road from defendant's parents — and received advice from the friend not to drive the vehicle in its current condition. If defendant accepted this advice, it would be logical that he would drive the short distance to his parents' property, ask to borrow one of their vehicles and leave his vehicle there until it was repaired. Although some people may attempt to repair a vehicle themselves in an effort to avoid detection, defendant testified that he and his father like to work on cars, had ordered parts through the friend to fix his sister's car and had previously fixed one of defendant's prior vehicles themselves after he had hit a deer.
Defendant also allowed the friend to copy the vehicle identification number and use it to obtain quotes on parts. This would be inconsistent with efforts to conceal the damage to the vehicle; indeed, the police were led to defendant because they contacted parts dealers and discovered that the friend had sought quotes on certain parts for this make and model of vehicle. When asked by a police officer, defendant told him where the vehicle was located. Defendant had not washed it, and the police were able to obtain samples of the victim's DNA from the hood. Under the circumstances, we conclude that the conviction for tampering with physical evidence was against the weight of the evidence (see People v Parker, 148 AD3d 1583, 1584-1585 [2017], lv denied 29 NY3d 1084 [2017]; People v Bradford, 118 AD3d 1254, 1257 [2014], lv denied 24 NY3d 1082 [2014]; compare People v Thompson, 75 AD3d 760, 764 [2010] [conviction upheld where vehicle involved in crime in Schenectady County was driven to and placed behind a house in Oneida County, then sold to someone in New York City], lvs denied 15 NY3d 893, 894, 896 [2010]; People v Wright, 13 AD3d 736, 738 [2004] [conviction upheld where repairs to boat involved in crash were "hastily done"], lv denied 4 NY3d 837 [2005]; People v Cardenas, 239 AD2d 594, 594-595 [1997] [conviction upheld where driver who hit two pedestrians "admittedly attempted to clean blood evidence off his vehicle, and removed the vehicle's license plates"], lv denied 90 NY2d 902 [1997]).
Defendant failed to preserve his challenges to most of the evidence that he now argues was unduly prejudicial, so we will not address those unpreserved arguments. He did object to testimony by a police sergeant that the police had prior interactions dealing with defendant, some of which were motor vehicle accidents. However, this passing statement was not unduly prejudicial, as it did not imply that defendant had committed a prior offense, especially where no evidence of a prior conviction was admitted at trial (see People v Keener, 152 AD3d 1073, 1075 [2017]).
Based on our dismissal of the conviction for tampering with physical evidence, defendant's argument concerning consecutive versus concurrent sentencing is academic. Though Supreme Court imposed the maximum sentence for leaving the scene of an incident without reporting, that sentence was not harsh or excessive. "A sentencing decision is a matter committed to the exercise of the court's discretion and it can be made only after careful consideration of all facts available at the time of sentencing" (People v Sookram, 156 AD3d 1254, 1255 [2017] [internal quotation marks, brackets, ellipsis and citation omitted]). The court was permitted to rely on defendant's lack of remorse, lack of accountability for his actions, and his attitude and lack of respect toward the proceedings and the justice system — including making a joke during his testimony and rolling his eyes while the court spoke at sentencing.
Defendant further asserts that Supreme Court improperly relied on an inaccurate presentence investigation report (hereinafter PSI), incorrectly indicated that alcohol was involved and sentenced defendant for the victim's death despite the court having dismissed the homicide charge. A PSI must include whether defendant was under the influence of alcohol while committing the offense for which he or she was convicted (see 9 NYCRR 350.1 [e]; 350.7 [b] [2] [i]; see also Penal Law § 60.27 [4] [a]). Although defendant correctly notes the lack of proof that he was intoxicated when he left the scene of the incident, the testimony established that he had six or seven alcoholic drinks over approximately seven hours prior to the incident. Therefore, the PSI was accurate when it noted an affirmative answer in the column labeled "[a]lcohol [u]sed at [o]ffense." Despite some improper and unsupported comments in the PSI reflecting the opinions of a police officer and the PSI's author that defendant may have been intoxicated, the court accurately noted that alcohol was involved in this offense. Moreover, even though defendant was not convicted of criminally negligent homicide, the court could properly consider the victim's death as an aspect of the crime of conviction. For instance, the violent nature of the crash should have made it more apparent to defendant that a person had been struck, and the fact that defendant left the body of a person he had killed — even if the collision and death were accidental — lying in the road could demonstrate defendant's lack of common decency and respect for human life. As the record does not indicate that the court relied upon any improper opinions or prejudicial statements in the PSI when rendering its sentence, we will not disturb the sentence for leaving the scene of an incident without reporting (see People v Paragallo, 82 AD3d 1508, 1510 [2011]).
Garry, P.J., Devine and Aarons, JJ., concur.
ORDERED that the judgment is modified, on the facts, by reversing defendant's conviction of tampering with physical evidence under count 3 of the indictment; said count dismissed and the sentence imposed thereon vacated; and, as so modified, affirmed.