HALL, Circuit Judge:
This appeal requires us to revisit an issue last considered in Gibbons v. Savage, 555 F.3d 112 (2d Cir.2009)- — under what circumstances does the exclusion of the public from a courtroom during voir dire violate a defendant’s Sixth Amendment right to a public trial. In Gibbons and earlier cases, we identified an exception to this right applicable to situations where the exclusion of the public, though improper, was too trivial to implicate the Sixth Amendment’s public trial guarantee, making vacatur of the defendant’s conviction unnecessary. We conclude that this exception applies here. We further conclude that this exception is consistent with the Supreme Court’s recent decision in Presley v. Georgia, — U.S. --, 130 S.Ct. 721,175 L.Ed.2d 675 (2010).
Accordingly, we reject Gupta’s Sixth Amendment challenge and AFFIRM his conviction and sentence. We dispose of Gupta’s other arguments on appeal in a separate summary order filed today.
BACKGROUND
Defendant Raghubir K. Gupta was charged with one count of immigration fraud under 18 U.S.C. § 1546(a). Trial began on March 24, 2008 at approximately 9:45 a.m. After the venire panel was seated, the district court gave preliminary remarks concerning the nature of the case, the general responsibilities of jurors, the anticipated length of the trial, and the format of voir dire. The court also identified Gupta as the defendant and summarized the indictment.. The court then read various questions to the venire from a written questionnaire, which was distributed to the prospective jurors to review. Following a short recess, the court called prospective jurors up to a sidebar to discuss their answers to the questionnaire, and after a second recess for lunch, the court posed questions to individual jurors regarding their background and interests. During the course of these questions, eleven jurors were dismissed for cause with the consent of both parties. Thereafter, counsel for both parties went to the jury room to exercise their peremptory challenges outside the presence of the venire; neither party objected to any of the challenges. The parties then returned to the courtroom, and the courtroom deputy empaneled the jury. After trial, the jury returned a guilty verdict, and the district court sentenced Gupta to 51 months’ imprisonment. Gupta appealed.
In April 2010, we granted Gupta’s motion for remand for additional fact-finding based on his allegation that a friend and a member of his family had been excluded from the courtroom during voir dire. On remand, Gupta submitted affidavits from his brother and girlfriend, Sudhir Gupta and Maria Young, who affirmed that on the morning of the first day of trial a court officer had asked them to leave the courtroom during voir dire; both stated that when they reentered the room later in the day, the jury had already been empaneled. Gupta’s counsel affirmed that he was unaware at the time of trial that Gupta’s brother and girlfriend had been excluded from the courtroom. In lieu of an evidentiary hearing, the district court directed William Delaney, the courtroom deputy on duty on the first day of Gupta’s trial, to submit an affidavit describing what had *866 occurred. Delaney affirmed that after the venire panel was seated in the courtroom:
At the Court’s direction, in order to accommodate the large number of jurors in the venire panel, and to protect the panel from hearing anything about the case from any member of the public present, I requested that individuals who were not venire panel members leave the courtroom during the jury selection. I conveyed to those individuals that once the jury selection was complete, and there was again space in the public area of the courtroom, they were more than welcome to attend the proceedings.
The district court adopted Delaney’s affidavit as its factual findings, after which jurisdiction was restored to us pursuant to the procedures set forth in United States v. Jacobson, 15 F.3d 19, 22 (2d Cir.1994).
DISCUSSION
A defendant’s right to a public trial is guaranteed by the Sixth Amendment, see Waller v. Georgia, 467 U.S. 39, 45-47, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), and this right extends to voir dire, Presley, 130 S.Ct. at 724 (“[T]he Sixth Amendment right to a public trial extends to the voir dire of prospective jurors.”) (citing Press-Enterprise Co. v. Superior Court of California, Riverside County, 464 U.S. 501, 509-10, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (the press and public have a First Amendment right to attend voir dire), and Waller, 467 U.S. at 46,104 S.Ct. 2210 (the Sixth Amendment right to a public trial is at least as broad as the First Amendment right to a public trial recognized in Press-Enterprise)); accord Gibbons, 555 F.3d at 115. Although the public trial guarantee creates a “presumption of openness,” Press-Enterprise, 464 U.S. at 510, 104 S.Ct. 819, this is not absolute. Four criteria must be satisfied to overcome this presumption and justify closure of a courtroom during a criminal proceeding: (1) “the party seeking- to close the [proceeding] must advance an overriding interest that is likely to be prejudiced”; (2) “the closure must be no broader than necessary to protect that interest”; (3) “the trial court must consider reasonable alternatives to closing the [proceeding]”; and (4) the trial court “must make findings adequate to support the closure.” Waller, 467 U.S. at 48, 104 S.Ct. 2210 (quoted in Presley, 130 S.Ct. at 724; Gibbons, 555 F.3d at 116; Ayala v. Speckard, 131 F.3d 62, 69 (2d Cir.1997) (en banc)).
Based on Delaney’s affidavit, Gupta’s brother and girlfriend were excluded from voir dire because of “the large number of jurors in the venire panel” and the need “to protect the panel from hearing anything about the case from any member of the public present.” Under Waller, these reasons are insufficient to justify a courtroom closure — a point the Government concedes. See Brief of Appellee at 25 (“[T]he District Court’s exclusion of members of the public from the courtroom during voir dire violated the four-factor Waller test.”); see also Gibbons, 555 F.3d at 117 (holding that under Waller, insufficient space because of the size of the venire and the risk of tainting the jury pool are not “compelling reasons” for closure). Notwithstanding this fact, the Government argues that under our “triviality exception,” identified in Gibbons and earlier cases, the closure of the courtroom did not violate Gupta’s Sixth Amendment public trial right. Gupta counters that Gibbons is distinguishable because there, the exclusion of the public was partial and temporary, and that our “triviality exception” is no longer valid post -Presley. We address each of these arguments in turn.
*867 I. The “Triviality Exception ”
Because the parties agree that under Waller the district court’s exclusion of Gupta’s brother and girlfriend during voir dire was unjustified, we must determine whether that error violated Gupta’s Sixth Amendment rights; under these circumstances, our starting point is the triviality exception.[1] See Smith v. Hollins, 448 F.3d 533, 540 (2d Cir.2006) (“[W]hen addressing whether an unjustified closure is a Sixth Amendment violation, a ‘triviality standard’ is the proper benchmark.”). We first identified a triviality exception to the public trial guarantee in Peterson:
A triviality standard, properly understood, does not dismiss a defendant’s claim on the grounds that the defendant was guilty anyway or that he did not suffer “prejudice” or “specific injury.” It is, in other words, very different from a harmless error inquiry. It looks, rather, to whether the actions of the court and the effect that they had on the conduct of the trial deprived the defendant — whether otherwise innocent or guilty — of the protections conferred by the Sixth Amendment.
85 F.3d at 42; see Carson v. Fischer, 421 F.3d 83, 94 (2d Cir.2005) (under a triviality analysis, the determination that the exclusion was trivial is tantamount to “conclud[ing] that the error was not significant enough to rise to the level of a constitutional violation”). We observed that the core values protected by the Sixth Amendment were: “1) to ensure a fair trial; 2) to remind the prosecutor and judge of their responsibility to the accused and the importance of their functions; 3) to encourage witnesses to come forward; and 4) to discourage perjury.” Peterson, 85 F.3d at 43 (citing Waller, 467 U.S. at 46-47, 104 S.Ct. 2210). Since Peterson, we have used these values to determine whether an unjustified closure of a courtroom violates the public trial guarantee. See Carson, 421 F.3d at 92-93 (“[T]he question of whether a particular closure implicates the Sixth Amendment turns on whether it undermines the values the Amendment is aimed to protect.”). If a courtroom closure subverts these values, it violates the Sixth Amendment, but if the closure is consistent with these values, it is trivial and does not implicate a defendant’s right to a public trial. See Morales v. United States, 635 F.3d 39, 43 n. 7 (2d Cir.2011) (“Triviality is ... gauged by the degree to which a particular closure undermines the values the Sixth Amendment was designed to protect.” (citing Gibbons, 555 F.3d at 120-21)).
*868 We most recently considered the triviality exception in Gibbons, which is analogous to the circumstances in this case. There, trial began in the early afternoon, and before inviting the venire into the courtroom, the trial judge excluded the defendant’s mother, citing the large number of prospective jurors and the need to limit potential contact between the venire and any spectators. See Gibbons, 555 F.3d at 114. No spectators were permitted to observe the afternoon proceedings, during which the trial judge gave general instructions to prospective jurors, read the indictment, and questioned individual jurors as to their impartiality. See id. The trial judge, the prosecutor, and defense counsel also went to an adjacent room to talk privately with each prospective juror who had claimed an inability to serve. See id. By the end of the proceedings that day, several prospective jurors were excused with the consent of both parties. See id. And when voir dire resumed the following morning, the defendant’s mother was allowed into the courtroom to observe the rest of the proceedings. See id. at 114-15.
Based on these facts, we first held that the reasons articulated by the trial court to justify the exclusion of the defendant’s mother “failed to satisfy the requirements of Waller.” Id. at 119. Applying the triviality exception, however, we concluded that although the exclusion was unjustified, it did not subvert the values underlying the Sixth Amendment’s public trial guarantee. See id. at 121. With regard to the third and fourth values — encouraging witnesses to come forward and discouraging perjury — we held that these values were “not implicated by voir dire because no witnesses testified.” Id. And as to the first and second values — ensuring a fair trial and reminding the prosecutor and judge of their responsibility to the accused and the importance of their functions — we held that “limiting the presence at the voir dire proceedings to only the attorneys, judge, defendant, and prospective jurors for one afternoon did not subvert these values.” Id. We emphasized:
Even if the trial judge had not excluded Gibbons’s mother from the courtroom, she would not have been able to watch a significant portion of what occurred during that afternoon session because the private interviews of the individual jurors as to their reasons for inability to serve were justifiably conducted in an adjacent room out of the hearing and sight of the other jurors. Further, nothing of significance happened during the part of the session that took place in the courtroom. The judge read the indictment, asked questions of a few jurors, and provided administrative details on what the jurors should expect if chosen. No prospective jurors were excused except with the consent of both parties. No peremptory challenges were made, and no obligations were asserted by either party to anything that occurred. The next morning, when voir dire resumed, Gibbons’s mother was allowed to watch the proceedings.

Id.

We reach the same conclusion here. Because the closed proceedings in the instant case were limited to voir dire, the third and fourth values were not implicated. And as to the first and second values, these too were not implicated because “nothing of significance happened.” Id. The district court gave prospective jurors general information about Gupta’s case, described the charging indictment, and presented jurors with a written questionnaire listing possible grounds for ineligibility. The court also conducted a short sidebar discussion with each prospective juror concerning their responses to the written questionnaire (a process that would not *869 have been audible to members of the public), and then posed general questions to the jurors in open court about their background and interests. Finally, the court and counsel for both parties adjourned to the jury room to exercise peremptory challenges; no objections were made to any of the challenges, and no jurors were dismissed without the consent of both parties.
We find no material difference between these facts and those in Gibbons. Indeed, the only actual difference is that in the instant case, the parties exercised their peremptory challenges while the proceedings were closed. But because this was done outside the presence of the venire, even if Gupta’s brother and sister had been in the courtroom, they would not have been able to observe these challenges.[2] Additionally, we reject Gupta’s attempt to distinguish Gibbons by characterizing the exclusion in that case as “partial and temporary.” Although the exclusion in Gibbons was limited to the first afternoon of voir dire, and not, as in the instant case, to all of the voir dire proceedings, we are not persuaded that this distinction warrants a different outcome. That the public was not excluded for all of voir dire in Gibbons was because the jury selection began in the afternoon, leaving insufficient time to complete voir dire before the end of the day. In Gupta’s case, jury selection began in the morning, which allowed the court to complete voir dire that same day. Regardless, nowhere in Gibbons did we intimate that -our holding was limited to situations involving a partial, as opposed to a complete closure, of the voir dire proceedings. The focus of our analysis was what transpired during the closed proceedings. And because what transpired during voir dire in Gibbons did not implicate the values underlying the public trial guarantee, and because voir dire in Gibbons and the instant case are substantially identical, we see no reason to reach a different conclusion.[3]
Finally, we identify a broader, institutional reason that the exclusion here was trivial. Historically, public trials emerged in England in response to the excesses and abuses of secret tribunals. See In re Oliver, 333 U.S. 257, 266-70, 68 S.Ct. 499, 92 L.Ed. 682 (1948) (discussing the evolution of the public trial guarantee); see generally Amar, A. Foreword: Sixth Amendment: *870 First Principles, 84 Geo. L.J. 641, 677-81 (1996) (cited in Peterson, 85 F.3d at 43 n. 5); Radin, M, The Right to a Public Trial, 6 Temp. L.Q. 381 (1932) (cited in In re Oliver, 333 U.S. at 268 n. 21, 68 S.Ct. 499). This was of paramount concern in In re Oliver, where a state judge sitting as a “one-man grand jury” charged, convicted, and sentenced a defendant with contempt during a secret session held in chambers. See In re Oliver, 333 U.S. at 258-59, 68 S.Ct. 499. Finding this unconstitutional, Justice Black, writing for the majority, opined that “[wjhatever other benefits the guarantee to an accused that his trial be conducted in public may confer upon our society, the guarantee has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution.” Id. at 270, 68 S.Ct. 499. For in this respect, “[t]he knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power.” Id.; see Gannett Co., Inc. v. DePasquale, 443 U.S. 368, 412, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) (“The public trial is rooted in the ‘principle that justice cannot survive behind walls of silence!.]’ ”) (Blackmun, J., concurring in part and dissenting in part) (quoting Sheppard v. Maxwell, 384 U.S. 333, 349, 86 S.Ct. 1507, 16 L.Edüd 600 (1966)); Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 492, 95 S.Ct. 1029, 43 L.Edüd 328 (1975) (holding that publicity “serves to guarantee the fairness of trials and to bring to bear the beneficial effects of public scrutiny upon the administration of justice”).
There is no question that a secret trial, insulated from the tempering effect of public witnesses, subverts the core values of the public trial guarantee. But if a public presence best ensures a fair criminal proceeding, then voir dire, by its very nature, is always “subject to contemporaneous review in the forum of public opinion,” In re Oliver, 333 U.S. at 270, 68 S.Ct. 499, because the venire is drawn from the public itself. Indeed, from their inception, jury trials guaranteed public scrutiny of the criminal process because “ ‘the presence of a jury ... insured the presence of a large part of the public.’ ” Press-Enterprise Co., 464 U.S. at 505, 104 S.Ct. 819 (quoting Radin at 388); see Radin at 388 (“We need scarcely be reminded that the jury was the patria, the ‘country’ and that it was in that capacity and not as judges, that it was summoned.”). And unlike the jury, which loses its status as mere spectator and becomes an impartial trier of fact once empaneled, members of the venire remain public witnesses during much of the voir dire proceedings, listening to the court’s questions and observing the conduct of counsel, until such time as they are chosen for the jury, disqualified, or excused.[4] For this reason, even where a trial court unjustifiably excludes spectators from the courtroom during voir dire, the presence of the venire lessens the extent to which that closure implicates the defendant’s public trial right because the venire, derived from and representative of the pub- *871 lie, guarantees that the voir dire proceedings will be subject to a substantial degree of continued public review.
We do not mean to say, however, that voir dire is not subject to the same Sixth Amendment guarantees as other parts of a criminal trial; Waller, Presley, and our own precedent make clear that a defendant’s right to a public trial unquestionably extends to voir dire. We emphasize only that in many cases the presence of the venire as a public witness safeguards the two relevant values of the public trial guarantee — ensuring a fair trial and reminding the prosecutor and judge of their responsibility to the accused and the importance of their functions. See Gibbons, 555 F.3d at 121. Indeed, there is little basis to presume that the impartial, public citizens comprising a venire would be any less vigilant in ensuring that the voir dire was fair and that the judge and the prosecutor remained cognizant of their responsibilities as would ordinary spectators observing the voir dire from the back of the courtroom.
II. The Impact 0/Presley v. Georgia
Alternatively, Gupta argues that we need not consider whether the “triviality exception” applies to the exclusion in his case because that exception is no longer valid after Presley. We disagree.
Presley presented the narrow question of whether the Supreme Court of Georgia correctly applied Waller in finding that a trial court’s exclusion of a spectator during voir dire was proper. Presley had argued before the Supreme Court of Georgia that prior to excluding the spectator from the courtroom, the trial court was required to consider alternatives to closure. See 130 S.Ct. at 723. But the Supreme Court of Georgia held that based on its review of Supreme Court precedent, it was not clear “whether a court must, sua sponte, advance its own alternatives to [closure],” and that “Presley was obliged to present the court with any alternatives that he wished the court to consider.” Id. (alteration in original). The Supreme Court reversed in a brief per curiam opinion:
In upholding exclusion of the public at juror voir dire ..., the Supreme Court of Georgia concluded, despite our explicit statements to the contrary, that trial courts need not consider alternatives to closure absent an opposing party’s proffer of some alternatives. While the Supreme Court of Georgia concluded this was an open question under this Court’s precedents, the statement in Waller that “the trial court must consider reasonable alternatives to closing the proceeding” settles the point.
Id. at 724 (quoting Waller, 467 U.S. at 48, 104 S.Ct. 2210).
Presley did not expand the Supreme Court’s precedent with respect to the public trial guarantee. See id. (“The conclusion that trial courts are required to consider alternatives to closure even when they are not offered by the parties is clear ... from this Court’s precedents.”). It simply reaffirmed the holding in Waller. And because the Supreme Court held that the Supreme Court of Georgia had misapplied Waller from the onset, it had no occasion to consider a “triviality exception” to the public trial guarantee. Accordingly, because it is undisputed that the district court’s exclusion of Gupta’s brother and girlfriend did not meet the four-part Waller test, and because Presley simply reaffirms that test, Presley does not alter the “triviality exception” in Peterson and our other cases, under which, notwithstanding an unjustified closure, vacatur of a defendant’s conviction is not warranted if the closure did not subvert the values underly *872 ing the public trial guarantee.[5] See also Morales, 635 F.3d at 43-44 (assuming, without deciding, that the triviality exception still applies after Presley).
CONCLUSION
To summarize, we hold: (1) although the district court’s exclusion of Gupta’s brother and girlfriend during voir dire failed to meet the four-factor test set forth in Waller (and now Presley), the exclusion was too trivial to implicate Gupta’s Sixth Amendment right to a public trial; and (2) Presley does not alter our “triviality exception” to the public trial guarantee.[6]
We affirm the judgment of the district court.

. Although we recognize that "[t]he denial of a public trial is a 'structural' error,” Smith v. Hollins, 448 F.3d 533, 540 (2d Cir.2006), "[i]t does not necessarily follow ... that every deprivation [of a right] ... considered to be 'structural' constitutes a violation of the Constitution or requires reversal of the conviction,” Gibbons, 555 F.3d at 120. Since Peterson, we have applied the triviality exception to the deprivation of the public trial right, despite that error’s "structural” nature, reasoning that it would be "unimaginable” to assume that "every temporary instance of unjustified exclusion of the public — no matter how brief or trivial, and no matter how inconsequential the proceedings that occurred during an unjustified closure — would require that a conviction be overturned.” Id.; see Smith, 448 F.3d at 540 (distinguishing between a harmless error and a triviality analysis, and holding that as to the deprivation of the public trial right, the latter is the appropriate standard despite the error's structural nature); Carson v. Fischer, 421 F.3d 83, 92-94 (2d Cir.2005) (same). The relevant point of inquiry, therefore, is whether the exclusion was trivial — if so, Gupta's request that we vacate his conviction is unsupportable. Cf. Gibbons, 555 F.3d at 121 ("We need not rule on the metaphysical question whether, in view of the triviality of the incident, it was not a deprivation of a constitutional right, or in contrast, it was a violation of a constitutional right, but, in spite of the inapplicability of the harmless error rule, too trivial to justify vacating the [lower] court’s judgment.”).

. We note that in any event, neither party raised any objections to the peremptory challenges.

. Our conclusion that “nothing of significance happened” during voir dire is not, as the dissent intimates, drawn from whole cloth. See Dissenting Op. at 874, 875-76. Rather, as already discussed, see supra at 868-69, we reach this conclusion based on the striking similarity between what transpired during the excluded proceedings in Gibbons and in the instant case. And while we recognize that the exclusion in Gibbons was only partial, neither Gupta nor the dissent has identified any specific events which occurred during voir dire here that are distinguishable from Gibbons, and which might, as a consequence, suggest that the proceedings were unfair or that the prosecutor and judge were unaware of their responsibility to the accused and the importance of their functions — i.e., that the proceedings subverted the two relevant values underlying the public trial guarantee.
Additionally, we reject the dissent's attempt to extrapolate our holding beyond the narrow confines defined in this opinion. See Dissenting Op. at 875-76 ("Now, apparently, the summary exclusion of the public ... can be excused so long as what occurred behind closed doors was brief and ‘nothing of significance happened.’ ”). As made clear in Peterson and subsequent decisions, application of the triviality exception requires a fact-specific analysis of the unique circumstances in a given case to determine whether a particular exclusion implicates a defendant's public trial right. Nothing in our opinion alters this analytical framework — indeed, it simply reaffirms the rule articulated in Gibbons and applies it to the particular facts before us in this case.

. The dissent maintains that because the venire’s attendance at court is required, its members lose their status as representatives of the public. See Dissenting Op. at 875-76. Although the institutional role of the venire as public witness supplements- — but does not control — our analysis of the values underlying the public trial guarantee, we respectfully disagree with the dissent that members of the venire are "part of the judicial process.” Id. There is a sharp distinction between the venire and an empaneled jury, and we see no reason to assume that members of the former shed their status as public witnesses simply because they are summonsed to court. Regardless, while the presence of the venire as a whole is a factor we consider in this analysis, in no respect do we hold that its presence alone is sufficient to safeguard the public trial guarantee.

. Only one of our sister circuits has squarely applied Presley to a courtroom closure during voir dire. See United States v. Agosto-Vega, 617 F.3d 541, 548 (1st Cir.2010). There, however, the First Circuit declined to consider whether a triviality exception existed post-Presley. See id. at 547-48 (citing Gibbons, 555 F.3d at 121).

. Although we conclude the triviality exception applies, our opinion may not be read as relieving trial courts of their burden of satisfying the four-factor test under Waller and Presley to the extent they intend to exclude the public from voir dire. There very well may be instances in which such an exclusion violates Waller and does not fall within the triviality exception, thus implicating the defendant's Sixth Amendment rights to the point that the judgment must be vacated. We hold only that under the particular circumstances presented here, this was not the case.