*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DONALD WAYNE DAVIS, JR.,

Defendant-Appellant.

FOR PUBLICATION
April 2, 2020

No. 343432
Genesee Circuit Court
LC No. 16-040020-FC

Before: SWARTZLE, P.J., and MARKEY and REDFORD, JJ.

SWARTZLE, P.J. (*concurring in part, dissenting in part*).

As our Supreme Court explained long ago, "Constitutions were written to be obeyed." *People v Micalizzi*, 223 Mich 580, 582; 194 NW 540 (1925). In this case, our Constitutions were not obeyed, specifically with respect to defendant's right to a public trial guaranteed under Article 1, § 20, of Michigan's 1963 Constitution and the Sixth Amendment to the United States Constitution. Although I agree with the majority that defense counsel did not render ineffective assistance of counsel and the admission of defendant's e-mail message into evidence was not outcome determinative, I cannot agree with the majority's conclusion that the violation of the right to a public trial does not warrant a new trial in this case. Therefore, I respectfully concur in part and dissent in part.

*The Trial Court Ordered the Courtroom Closed.* At the outset, I disagree with the majority regarding its characterization of the trial court's decision to close the courtroom to all members of the public—with the notable exception of the victim's mother—from the afternoon on the second day of defendant's trial until the jury returned its verdict. The trial court ordered from the bench, "I'm going to bar everyone from this courthouse except for [the victim's] mother. . . . The rest of you leave. Don't you come back." When immediately asked for clarification, the trial court explained that the order applied "[f]or the remainder of the trial, all the way into next week. . . . The only person allowed to watch this trial is the mother of the young man who died." Although, when on remand from this Court, the trial court subsequently interpreted its earlier order more narrowly, the contemporaneous record is clear—the trial court ordered the courtroom closed for

the rest of the trial, and we should not second-guess whether the trial court really meant what it said at the time.[1]

*Forfeiture, Not Waiver.*  Moreover, defendant did not waive his constitutional right to a public trial.  Waiver is the "intentional abandonment of a known right," *LME v ARS*, 261 Mich App 273, 277; 680 NW2d 902 (2004), while forfeiture is the failure to object or otherwise preserve a right, *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).  In the context of criminal law, "waiver is where the defendant *affirmatively agrees* with the course of action taken by the trial court." 2 Gillespie Michigan Criminal Law & Procedure § 21:15 (2d ed) (emphasis added).  Here, regardless of what defense counsel or defendant might have thought at the time, it is undisputed that neither counsel nor defendant himself made any affirmative statement requesting, concurring with, or otherwise approving the trial court's decision to close the courtroom.  Nor was there an objection, so it is appropriate that the Court reviews defendant's public-trial claim under the plain-error standard.  *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

*The Trial Court Plainly Erred.*  I agree with the majority that the trial court's closure of the courtroom to all but the victim's mother constituted plain error.  I note that the trial court failed to make any factual findings that the person who spoke to a juror—the mother of the victim's child—intended to interfere with court proceedings or intended to engage in jury tampering.  Although her actions could be interpreted in this manner, it would be inappropriate for this Court to make its own factual evaluation on the issue in the absence of affirmative factual findings by the trial court at the time the trial court decided to close the courtroom.  And, even if the trial court had made such findings, the record confirms that closure of the courtroom to all but the victim's mother was much broader than necessary to protect the valid interest in having and maintaining a fair and impartial jury.  The trial court failed to comply with the requirements set forth in *People v Vaughn*, 491 Mich 642, 653; 821 NW2d 288 (2012), for closing a courtroom during a criminal trial.  Not only was the closure broader than necessary, but the trial court failed to consider reasonable alternatives to closing the courtroom.  Therefore, the trial court committed plain error, and both the first and second prongs of the plain-error test have been satisfied.  See *Carines*, 460 Mich at 763.

I also agree with the majority that the trial court's violation of defendant's constitutional right to a public trial was a structural error.  See *Vaughn*, 491 Mich at 655, 667.  Therefore, the

---

[1] The majority notes that, on a single occasion, Bryan Wooten attempted to observe the trial, but defendant gestured Mr. Wooten to leave.  It is unknown on this record whether defendant gestured because he did not want to anger the trial court by having a supporter defy the trial court's earlier order or, rather, because he did not want someone who supported him to observe the trial, though the latter conclusion would seem to be an odd one to draw.  Moreover, whether a single person on a single occasion was able to enter the courtroom briefly is a far cry from showing that the courtroom was open to the general public throughout the trial.  In any event, rather than rely on supposition, it would seem to be the better practice to rely on the trial court's order from the bench, which, as I have explained, is quite clear.

trial court's plain error affected defendant's substantial rights, and the third prong of the plain-error test has also been satisfied. See *Carines*, 460 Mich at 763.

*Serious Impact on Fairness, Integrity, or Public Reputation of Proceeding.* Our Supreme Court has made clear that, even though "the denial of the right to a public trial is a structural error," it remains subject to the fourth prong of the *Carines* plain-error test. See *Vaughn*, 491 Mich at 666-667. Therefore, defendant must show that "the plain, forfeited error resulted in the conviction of an actually innocent defendant" or the error "seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Carines*, 460 Mich at 763 (cleaned up). I agree with the majority that defendant has failed to demonstrate on appeal that he was actually innocent of the crimes for which he was convicted. Yet, this does not end our review.

In *Vaughn*, our Supreme Court found persuasive the analysis from the United States Court of Appeals for the Second Circuit, recognizing that a defendant's claim regarding the violation of his constitutional right to a public trial should not be dismissed "on the grounds that the defendant was guilty anyway or that he did not suffer 'prejudice' or 'specific injury.' " *Vaughn*, 491 Mich at 667, quoting *United States v Gupta*, 650 F3d 863, 867 (CA 2, 2011). Rather, a defendant's claim should be examined through the lens of "whether the actions of the court and the effect that they had on the conduct of the trial deprived the defendant—whether otherwise innocent or guilty—of the protections conferred by the Sixth Amendment." *Id.*, quoting *Gupta*, 650 F3d at 867. This analysis is consistent with well-established precedent from our Supreme Court:

> We are not concerned with the guilt or the innocence of this defendant. We are concerned with whether his constitutional rights have been invaded. Constitutions were written to be obeyed. Their provisions are mandatory. They protect the humblest as well as the powerful, the meanest as well as the upright. The defendant by the Constitution was guaranteed a public trial, not one behind locked doors; he was guaranteed a trial to which the public was admitted, not part of the public and part of the time, but the public generally and all of the time. [*Micalizzi*, 223 Mich at 582.]

Under this rubric, we must consider the degree of impact the trial court's decision had on the fairness, integrity, or public reputation of defendant's trial. "While any error that is structural is likely to have *an* effect on the fairness, integrity or public reputation of judicial proceedings, the plain-error analysis requires us to consider whether an error *seriously* affected those factors." *Vaughn*, 491 Mich at 667 (cleaned up). It is at this juncture that I fundamentally part ways with my colleagues, as I believe that the closure had a serious impact on these concerns, not just a marginal impact.

*Compare the Closure Here With* People v Vaughn. " 'The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions . . . .' " *Gannett Co, Inc v DePasquale*, 443 US 368, 380; 99 S Ct 2898; 61 L Ed 2d 608 (1979), quoting *In re Oliver*, 333 US 257, 270 n 25; 68 S Ct 499; 92 L Ed 2d 682 (1948). In addition to ensuring that the judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward

and discourages perjury. See *In re Oliver*, 333 US at 270 n 24. To this end, the goals of the protections conferred by the Sixth Amendment include "(1) ensuring a fair trial, (2) reminding the prosecution and court of their responsibility to the accused and the importance of their functions, (3) encouraging witnesses to come forward, and (4) discouraging perjury." *Vaughn*, 491 Mich at 667.

When compared with the courtroom closure in *Vaughn*, the seriousness of the closure here becomes evident. *Vaughn* involved a trial court's temporary closure of the courtroom during *voir dire* of the jury. See *id.* at 647, 665. Our Supreme Court found it notable that the *venire* was present during this portion of the trial-court proceedings, and it concluded that " 'the presence of the *venire* lessens the extent to which [the court's] closure implicates the defendant's public trial right because the *venire*, derived from and representative of the public, guarantees that the *voir dire* proceedings will be subject to a substantial degree of continued public review.' " *Id*. at 668, quoting *Gupta*, 650 F3d at 870-871. In contrast, the trial court in this case closed the courtroom after the jury had been seated and the *venire* had been dismissed. The closure was of far greater extent than the closure considered in *Vaughn*, and because the *venire* was not present during the closure, defendant's trial proceedings were not "subject to a substantial degree of continued public review." *Id*.

Furthermore, the *Vaughn* Court acknowledged that, like in *Gupta*, no witnesses testified during the closure of the courtroom, as the trial court closed only the *voir dire* proceedings. *Id*. at 668. Again, in contrast, during the period when the courtroom was closed here, the jury heard the testimony of 14 witnesses, 13 of whom testified for the prosecution. Counsel then presented their closing arguments, the trial court instructed the jury, and the jury returned its verdict—all in private. The first, third, and fourth values protected by the constitutional right to a public trial were undermined here, unlike the situation presented in *Vaughn*.

*If Not Here, Where?* There are certainly situations when it is appropriate to close the courtroom (fully or partially); for example, when a witness has a legitimate fear of reprisal from specific spectators, where there is limited seating capacity during *voir dire*, or when public-health measures involve social distancing (e.g., the novel coronavirus). See *id*. at 653; *EW Scripps Co v Fulton*, 100 Ohio App 157, 168 (1955) (noting that a trial judge can exclude the public when necessary to "protect the public health, the public morals and the public safety"). This was not one of those situations. Given all that happened behind closed doors—most of the witness testimony, arguments, instructions, and the rendering of the verdict—I find little to doubt that the closure seriously affected the fairness, integrity, and public reputation of this trial.

In *Micalizzi*, the trial court physically barred the public. Here, the trial court orally barred the public. No matter, the effect was the same. As our Supreme Court put the matter, "If a portion of the trial may be conducted behind barred doors, it may all be conducted behind barred doors. If one constitutional right may be violated with impunity, all may be, and the bill of rights becomes but a scrap of paper. The defendant has not had the public trial guaranteed him by the Constitution." *Micalizzi*, 223 Mich at 585.

Accordingly, I would reverse defendant's convictions and remand for a new, public trial.


/s/ Brock A. Swartzle